*Attachment 2 for Crt Case # Amended Complaint  5:18-mc-689-mHH*

**EEOC
DIRECTOR OF FEDERAL OPERATIONS
P.O.BOX 77960
Washington, DC 20013-8960**

FILED
2018 MAY 16  A 11: 22
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| David Hawthorne )<br>COMPLAINANT/PLANTIFF )<br>  )<br>  v.  )<br>Robert M. Speer, )<br>Acting Secretary )<br><u>Department of the Army,</u> )<br>AGENCY Defendant )<br>  )<br>     AND )<br>  )<br><u>AFGE LOCAL 1858</u> )<br>Union Local Defendant )<br>  )<br>     AND )<br>  )<br><u>AFGE 5th District</u> )<br>Union District Defendant )<br>  ) | Agency Case No.<br>ARREDSTON17MAY01829<br><br>EEOC OFO Docket#: 0120172813.<br><br>DATE: September 14, 2017 |

## THIS BRIEF IS MY, THE PLAINTIFF, REPLY BRIEF TO AGENCY FINAL AGENCY DECISION (FAD)  DATED SEPTEMBER 7, 2017

**THE AGENCY, ABSOUTLY, DOES NOT HAVE THE AUTHORITY, PURSUANT TO COMMISSION REGULATIONS for 29 CFR 1614.107 et seq, TO DISMISS MY COMPLAINT, PURSUANT TO THE CFR, 29 CFR 1614.107(a)(1), THAT IT USED TO DISMISS MY CLAIMS**

The EEOC guidance relative to 29 CFR 1614.107 et seq states that an Agency may dismiss a **_COMPLAINT_** That fails to state **_A CLAIM_** under §1614.103 or §1614.106(a) or states the same claim that is pending before or has been decided by the agency or Commission. In reviewing these section of the commissions CFR, one by one, 29 CFR 1614.103 as relates to me states that I as a plaintiff must be covered under Executive agencies as defined in 5 U.S.C. 105 …. As I work for the Department of the Army I met this qualification so the agency could not dismiss my complaint for this reason.

In 29 CFR 1614.106(a) it states that a complaint must be filed with the agency that allegedly discriminated against the complainant.  I filed my complaint relative to my DA FORM 2590 within the Army Agency [ here after referred to as Agency]EEO office as such … my Complaint cannot be dismissed because of this section of 29 CFR 1614.107(a)(1) relative to dismissing a complaint for noncompliance to 29 CFR 1614.106(a). As stated I do not meet any of section 29 CFR 1614.107(a) for 29 CFR §1614.103 or 29 CFR §1614.106(a).

In the Agency EEO Final Agency Decision (FAD) for my ARREDSTON17MAY01829 complaint Jennifer Thompson listed only 3 of the 9 claims and then fragmented/truncated those listed after I made the claim. So the Agency did not list all of my claims. Those claim(s) that it did list it truncated, and the Agency did acknowledge all of my claims via email, mail carrier or electronic delivery receipt notice.

The guidance in 29 CFR 1614.107(a) (1) states that the Agency may dismiss a claim the fails to state a claim; however, the Agency dismissed my entire COIMPLANT without dismissing all the acknowledge claims it received and acknowledge. As such and according to the very regulation the Agency used, 29 CFR 1614.107 et seq, to dismiss my complaint ***the Agency can only dismiss a COMPLAINT in accordance with 29 CFR 1614.107 if it has dismissed all of the claim(s) in that complaint***. Since the agency had not dismissed all the acknowledge claim(s) in my ARREDSTON17MAY01829 COMPLAINT then Jennifer Thompson, on Behalf of the Agency, does not have the vested authority from this Commission to dismiss my ARREDSTON17MAY01829 COMPLAINT, and that's just a material fact and the Agency's knows that; but there is a different motive here and its Vengeance and retaliation from the Agency per se.

The Agency, acting through Jennifer Thompson, dismissed my complaint out of vengeance, and malicious retaliation for a previously EEO claims [case number is ARREDSTON15AUG04058 and is now before EEOC Justice Mason Barrett] dismissed by Jennifer Thompson that were over turned on appeal for duty of intervention to from her Boss, Director Rufus B. Caruthers Jr of IMCOM HQ (US) who is the Army EEO Director of directors. The information from that IRD investigation that followed the reinstatement of claims previously dismissed by Jennifer Thompson in case number is ARREDSTON15AUG04058 has led to the uncovering of the Agency's intentional misrepresentation and lying to this very EEOC OFO commission for DA Docket#(s): ARREDSTON13JUN02070 and OFO Dockets: 0120160549, misrepresentation of fact that led this very EEOC OFO Commission to rule in the Agency's favor. In order to stay focused on my ARREDSTON17MAY01829 COMPLAINT I will continue with the importance of case number is ARREDSTON15AUG04058 But if you look at exhibit 3 on page 3 and 2 you can see where Jennifer Dismissed my most significant claim, a bases. On page 3 of exhibit 3 she dismissed my claims and did not have the based I claimed, I objected, then on page 2 of exhibit 3 she added the based but still dismissed the Claim a, I continued to object. She was dismissing my claims and based for the wrong reasons, even after it was pointed out to her she was reading the commission's regulations wrong. After I appealed to her Boss in Texas about the in accurate way she was understanding the commission regulations for dismissing my claims "a" and after he reviewed the issues he a few weeks later he contacted me as is illustrated in exhibit 2 (highlighted) where he over turned Jennifer Thompson dismissal of my claim a, shortly after I received the 1st page in exhibit 3 that said the claim was accepted.

This is very important to the EEOC OFO because it is precisely because of the overruling of Jennifer Thompson and that accepted claim that show why the EEOC OFO made the incorrect ruling in DA Docket#(s): ARREDSTON13JUN02070 and OFO Dockets: 0120160549.

**EEOC OFO RULING ON INTENTIONAL MISLEADING INFORMATION PROVIDED BY AGENCY**
Because of the accepted claim in the case of ARREDSTON15AUG04058, an investigation followed. The investigation into ARREDSTON15AUG04058, now before EEOC Justice Mason Barrett, case has reviled that the EEO OFO in its ruling of ARREDSTON13JUN02070 case, now before a US Federal Judge in North Alabama, shows that the reasoning the Agency gave EEOC OFO that allowed this Commission to rule in the Agency's favor, ***was in fact a BIG lie, see exhibit 4***. And that case ruled on by EEOC OFO, because of the new evidence, is absolutely likely to overturn the EEOC's OFO decision, because the decision this very Commission used to give the Agency a favorable ruling, which was based on the Agency's

2

<u>STATEMENTS ALONE</u> for DA Docket#(s): ARREDSTON13JUN02070 and OFO Dockets: 0120160549, is shown, in the IRD investigative file illustrated here in exhibit 4, to be 100% false. It also shows that the Agency in all its Briefs has been misleading the EEOC OFO for favorable rulings on false information, favorable rulings that the EEOC OFO has been giving the Agency.

These revelations are the motive that the Agency has put into denying my current Complaint of ARREDSTON17MAY01829 case; thronging out and truncating my claim(s) that it decided to list. This is in and of itself retaliation from the Agency legal counsel and the Agency EEO office against me ... right on the EEOC OFO doorstep for case number agency ARREDSTON17MAY01829.

If the commission would like to read ahead on why the Agency is vengefully and maliciously chipping away at my rights please see exhibit 1, exhibit 3 page 3 then page 2 of that exhibit, then exhibit 2 happened, then exhibit 3 page 1 happened, then exhibit 4 (where we are in Federal court)
 ... in that order.

To Continue, that section 29 CFR 1614.107(a) (1) of the commissions regulations goes on to state that "a complaint may also be dismissed if the same claim is pending before or has been decided by the agency or Commission. By analysis this says two things, one is that: the agency can only dismiss an entire Complaint if that complaint has only one claim in that entire Complaint attributed that can be attributed to 29 CFR 1614.107(a)(1), or two that; the agency must go through each claim, pursuant to 29 CFR 1614.106(d) for 29 CFR 1614.106(e), to the tune that the Agency has disqualified claims relative to 29 CFR 1614.107(a)(1) with respect to 29 CFR 1614.106(d) for 29 CFR 1614.106(e) for 29 CFR 1614.107(a) **_FOR THE ENTIRE COMPLAINT TO BE DISMISSED_**. My Complaint had several claim(s), more than the 3 listed by the Agency in the Agency EEO FAD that the Agency EEO office acknowledges as claims ... yet the Agency EEO FAD that was authored or at least signed by Jenifer Thompson, did not list my other claims in the Agency's EEO FAD.
The proper Commissions regulation the Agency should have applied here for multiple claims is 29 CFR 1614.107(9)(b). There it states that: Where the Agency believes that some but not all of the claims in a complaint should be dismissed for the reasons contained in paragraphs (a)(1) through (9) of this section, <u>_the agency shall notify the complainant in writing of its determination, the rationale for that determination and that those claims_</u> will not be investigated, and shall place a copy of the notice in the investigative file. But the Agency did not do this it simply chose not address the acknowledge claims, which this commission specifically says, pursuant to 29 CFR 1614.106(d) for 29 CFR 1614.106(e), it cannot do. Simply acknowledging claim and leaving them of the official EEO FAD is not dismissing them, and not the proper guidance the commission required to dismiss a claim pursuant to is
29 CFR 1614.107 et seq.

**UNION OFFICIALS AND THEIR REPRESENTATIONAL CAPACITY ARE NOT APPLICAPABLE IN THIS CASE**
In the Agency FAD it speaks at length about Union officials acting in their representational capacity; three cases specifically are: Bray v. Department of Treasury, EEOC Request No. 05940748 (23 March 1995); Collier v. Department of Commerce EEOC Appeal No. 01A13194 (2001) and Smith v. Department of Veterans Affairs, EEOC Appeal No. 01A32477 (28 July 2003). These cases have a common point, that "the EEOC has repeatedly found that actions taken by Union officials **_in their representational capacity_** concerning protected matters are not actionable under regulations and complaints of such action failure to state a claim and may be properly dismissed by agency. However, these are perpendicular comparisons relative to my complaint of Agency case number ARREDSTON17MAY01829 for EEOC OFO Docket#: 0120172813.

For the cases listed above quoting in the Agency Final Agency Decision (FAD) dated September 7, 2017 relative to Union officials acting in their representational capacity, it must be seen that <u>Union officials are not acting in their representational capacity concerning protected matters if their actions are reactions from within their representational capacity to retaliation against individuals opposing **ANY** practice made unlawful by title VII, subjected to 29 CFR 1614.101(b) and that of 29 CFR §1614.103 and/or 29 CFR §1614.106(a).</u>

If a Union president wanted to remove a Union officer, subordinate to him/her, acting in their representational capacity, for any reason, that would be quite qualifiable and not subjected to 29 CFR 1614.101 et seq review; however, if the Union management official commits a Sexual Assault, or a Sexual harassment etc. and the victim filed a lawful complaint against them and the Union official tells that victim, in writing, that they are being removed from their union office position for the **SOLE REASON** that the victim filed a lawful sexual complaint against the same Union official that removed them, then ... pursuant to 29 CFR 1614.101(b) and subjected to 29 CFR §1614.103 or 29 CFR §1614.106(a) that Union official at that instant of removing the Union officer from their position *will have ceased to act in their representational copacity* because they would have committed a civil violation of a federal statute pursuant to 42 U.S.C. 2000e-3 et seq, and the commissions regulations relative to 29 CFR 1614.101(b). The cases quoted by the Agency do not cover this as none of those case have experienced this.

ALSO Union officials who, either personally or acting through a law firm explicitly stating that that law firm is acting on their behalf, intentionally interferes with a federal investigation by threats or force, or by any threatening letter or communication ... who endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States ... are not acting in their *representational capacity concerning protected matters*. As such this claim should have alone allowed my Complaint to proceed. But the EEO Counselor in their EEO FAD dismissing my complaint acted against the commissions regulations pursuant to 29 CFR 1614.105(g) where there it states that "The Counselor shall not attempt in any way to restrain the aggrieved person from filing a complaint." By not listing or dismissing, and even truncating or fragmenting my claims, the Agency incorrectly applied using 29 CFR 1614.107(a)(1) when dismissing my complaint.

In hindsight when looking over exhibit 1 highlighted when I tried to file a claim against EEO Director Jennifer Thompson for editing and removing my claims I did not understand anything about the commissions regulations relative to 29 CFR 1614.107(a)(1) for failure, in fact I only really understood the depth of that relative to this ARREDSTON17MAY01829 COMPLAINT; nevertheless at the time the Agency's Jennifer Thompson was removing and changing my claims I understood, INTUITIVELY, thankfully, that my complaint filed in the way the Agency was changing and removing my claims would have afforded the Agency a victory on summary judgment. As stated in then and outlined in exhibit 1 ( highlighted) such a Complaint on the Bases relative to the unassociated claims as Jennifer Thompson had them would be dismissed by any court/EEOC AJ because once again, in effect a Bases with no associated claims changes my entire ARRED5TON15AUG04058 Complaint relative to Age and Race to be a Complaint against AGE and Race that I am filing against MYSELF based on Race and Age, which makes no sense. I went on to say that, "this is a direct benefit to the Agency ..."

At the time of ARREDSTON15AUG04058 the Agency Counselors did not mind having an investigation because on appearance of a EEOC judge before a hearing, it could have properly used "failure to state a claim" as outlined in the Rules of Civil Procedure for adjudicators like Federal judges and the EEOC, and

4

they would have won because as that complaint was written it had me filing a complaint against myself, a plaintiff cannot filed a claim against them self ....

Here for this ARREDSTON17MAY01829 COMPLAINT the agency does mind in investigation, which is why they not applied 29 CFR 1614.107 et seq because an investigation will show, contrary to what they say in the Agency Final Agency Decision (FAD) dated September 7, 2017 for ARREDSTON17MAY01829 COMPLAINT, the investigation will show then as the Joint Tortfeasor(s) they are and illustrate with investigatory power how the Agency and AFGE have colluded together. However I still will cove r the Joint Tortfeasor relationship without the investigation later in this brief; while illustrating, from their own education in its brief to the Commission, how not only did assist the AFGE local 1858, when they did not have to, in violating the commission regulations pursuant to 29 CFR 1614.101(b). This I will show later in this brief.

### 18 U.S.C. § 1505 CLAIM AS RELATES TO THE COMMISSIONS 29 CFR 1614.101(B) DIRECTION

After removing me from my official Union positions assistant vice president because of my opposition to his relentless and unwelcome sexual advances the Union president had his law firm send me a threating letter to my home demanding that I with draw my EEO complaint against him or face the might of their law firm, and they gave me 5 or so days to do it .... I was afraid, apprehensive, and didn't know what to do. I later filed another claim with the Army EEO office relative to 18 U.S.C. §1505 for an obstruction claim.

18 U.S.C. §1505 states that: **WHOEVER** ... by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or *endeavors to influence*, obstruct, or impede *the due and proper odministrotion of the law under which any pending is being had before ony department* (the *Army EEO department) or agency (The Army agency) of the United States shall be fined under this title* ... The agency formally acknowledge that obstruction claim pursuant to 29 CFR 1614.106(e) for 29 CFR 1614.106(d) ... just see exhibit 5.

In fact on Monday, June 19, 2017 3:23 PM I received an email reply back from an EEO Counselor, Chanley Pickard, that had 3 other EEO counselors CC on it, namely; Katrisa Norwood, Brenda Cammon, and Tiphanie Pharris acknowledging my 18 U.S.C. §1505 claim (see exhibit 5). That reply to my claim stated:

"Mr. Hawthorne, your email is Acknowledged, this claim will be will be added to your current compliant"

However the Agency EEO office, the same one that denied my ARREDSTON17MAY01829 COMPLAINT based on the acknowledge claims, never included that claim in there EEO FAD when they dismissed my complaint, nor did that use the necessary rational in denying it pursuant to 29 CFR 1614.107(9)(b), further rendering them in capable of using 29 CFR 1614.107(a) to dismiss my Complaint, because in order to dismiss my Complaint under 29 CFR 1614.107(a) they have to dismiss claims pursuant to 29 CFR 1614.107(a)(1), that is , each claim, according to that same commission regulation ... and they have not.

Additionally I filed other claims they did not address such as defamation relative to libel and slander

a. On Monday, June 19, 2017 3:15 PM after initiating Contact with EEO office to file a Base Complaint(s) of retaliation against the AFGE local 1858, the day after I was told byt a member of the Executive Board not to contact here about this sexual harassment on their Union president, that her "**interest is on a grander scale**, the House of Representatives, The 5enate and the White house in Washington DC (see exhibit 6, highlighted section).

In effect the Union was saying that Title VII complaints were of no interest to them, and since then, the AFGE Union Local 1858, not AFGE 5th District has contacted me accordingly relative to an investigation into the matter. In fact exhibit 6 that is highlighted, with all the AFGE Executives, President, Assistant President and Union Executive Vice president …as well as the AFGE 5th district regional manage and Sr. Vice President for the south eastern district have not reached out to me at all; and the Agency EEO office along with Agency MER, have made efforts to dismiss my entire complaint … even without addressing all of MY claim(s) (not the truncated claims used by the Agency in its EEO FAD) …. This illustrates as well a Duty owed here … hence Joint Tortfeasor(s).

This is another reason that as AFGE Local 1858, a Business Invitee and/or Business Contractual partner of the AFGE Local 18S8 union and AGE 5th District are Joint Tortfeasor(s) because this is a clear addiction of Duty of Care, We are Army chattel/employees. AFGE as the Army's business invitee/Army Contractor Partner AFGE be can indemnified by the Army for redress as to level of negligence? But, again I will address this later in the brief.

b. On Thursday, June 15, 2017 10:02 AM after initiating Contact with EEO office where I claimed that the AFGE Local 1858 and or executive board enabled and/or encourage Abner Merriweather to removed me after I had filed my complaint against him, and after

I claimed from the AFGE LOCAL executive board that Abner Merriweather be suspended until the outcome of the EEO investigation because I believed my removal or something like it would happen when I filed the sexual harassment complaint against Abner Merriweather.

c. On Thursday, June 15, 2017 10:02 AM after initiating Contact with EEO office where I claimed that the AFGE district office in Atlanta (of which Everett Kelley is president, with dominion over this Local Union AFGE establishment, and he who was notified) enabled and/or encourage Abner Merriweather to removed me as assistant Vice President of LOGSA Local 1858 after I had filed a complaint against Abner Merriweather requesting that he be suspended until the outcome of the EEO investigation due to the nature of the sexual harassment complaint/claims I provided to the EEO office, with physical evidence, I provided exhibits.

d. On Wednesday, June 07, 2017 9:31 AM after initiating Contact with EEO office to file a Base Complaint of Sexual Harassment I requested the EEO please add the claim of Defamation of character relative to slander and libel to my Base complaint of Sexual Harassment against Abner Merriweather, I provided exhibits.

And the list goes on and on, I've actually already sent these reiterated claims in with my original appeal to the commission. The point is I had several complaint and they were, after being acknowledge, not added to the Agency EEO FAD

Without the redress from this Commission, will it then be the practice that a UNION president in Partnership with the Army on the Army installation relative to Army employees, as explicit retaliatory reasoning as written by the Union president in this case, to be free to violate 29 CFR 1614.101(a) and/or 29 CFR 1614.101(b) with the gift from the Army of "***complete immunity from liability***" to the tune that 29 CFR 1614.101et seq does not apply to Unions nor Unions Presidents, nor the Army as the Land owner which 29 CFR 1614.101(b) is occurring as a Plaintiff filing a complaint in accordance with 29 CFR part 1614?

And as illustrated on the EEOC web page, Title VII redress applies to Unions too, see EEOC Link https://www.eeoc.gov/eeoc/

That violation of 29 CFR 1614.101(b) relative to retaliation, is a lawful claim to make not just for 42 U.S.C. 2000e-3 et seq, but also for 18 U.S.C. §1505 obstruction claim made too as well as the other listed I this brief, as was made to the EEO consoler, acknowledge by the EEO counselor, but left out of the The When the Agency EEO office FAD dismissed my complaint it was in violations of a number of the commission regulations, namely: 29 CFR 1614.105(c); 29 CFR 1614.108(b); 29 CFR 1614.107(9)(b); MD 110 section III, authorize by 29 CFR 1614 105(c)(2) tells the agency that it MUST not Fragment Plaintiffs Complaints of which they did and a list of others.

### AGENCY ATTEMPTS TO SHIFT BLAME FOR 29 CFR 1614.101(B) RETALIATION FROM ARMY TO AFGE ALONE

The Agency stated to this commission in its Final Agency Decision (FAD) dated September 7, 2017 for Agency case number ARREDSTON17MAY01829 that the retaliatory incident against me by their Business Invitee and/or Business Contractual partner, AFGE Local 1858, was **SENT** on **AFGE LETTER HEAD** and they, the Agency had nothing to do with it .... but that is absolutely not true, because although AFGE wrote the Letter removing me from my Union official position using AFGE's letter head the Army, by its own admission, carried (or sent) the letter to me, provided the computer system for AFGE to write the letter and provided the email address for AFGE to use for the letter, all while AFGE has its own independent system for internet, email and computer system in the same office as the Army equipment that it used.

Also, this occurred during Army defined duty hours for the normal Army employee, and the agency was paying the Union president per hour at the time these incidents occurred, making the Army and AFGE Local 18S8 with the AFGE 5th district Joint Tortfeasors. The Army may indemnify its Business Invitee or Business Contractual partner AFGE Local 1858 and/or AFGE 5th district relative to being Joint Tortfeasors to figure out who was liable most, but the Army cannot escape its Duty of Care for my safety as relates to retaliation, nor reasonably expect to be excluded from their Duty of Care owed by them to me, especially as they had a physical hand in violating 29 CFR 1614.101(b) when they provided without objection the email address use, the network used, the computer use. A person driving a getaway car from a bank robbery is just as guilty as the person that went into bank to rob it ....

The fact is, the initial act of RETALIATION from the Union president occurred on Army physical land from one of the Agency employees during the average Army employee duty hours of 6am to 6pm; also, the Army was made aware of the incidents of retaliation and obstruction by me.

I communicated to the Agency before and after the acts of obstruction and retaliation by AFGE local 1858 Executive Board and AFGE Union president while at the same time I was pleaded to the Agency Management Employee Relations (MER), which is the HR department of the Army, for its protection, but

7

MER and the AFGE Board acknowledging receipt of my correspondence never replied with corrective actions to me at all, in fact AFGE with MER the EEO Director Jennifer Thompson ( the same person that Dismissed my entire claim ( this is the collusion). In the cc line told me not to bother her with the matter that she was too busy with more important things. The Union executive member representative stated verbatim (see exhibit 6 highlighted).

"Mr. Hawthorne, please remove me from your distro list regarding this matter ... I do not want to be involved nor am I interested in what has transpired between you and Mr. Merriweather My interest is on a grander scale, the House of Representatives, The Senate and the White house in Washington DC. Thanking you in advance for your cooperation and understanding.

Jacqueline Watkins-Crawford
AFGE Local 1858
Vice President-ACC-Redstone
256-842-9719

So this illustrates that the Union is more interested in spending the Union money on travel all over the us and its territories, then the Violations of individuals Title VII rights. It right there( exhibit 6) in black and white, with witnesses.

Such a reply created an unbelievable amount of embarrassment to me,, especially with all those people, especially the person that Sexually harassed me, the Agency EEEO office, the Agency Human Resource office,, the AFGE Sr. Executives, and the AFGE executives from the District that oversee S states. To say more not one of them reach out to me afterword's .... If that isn't intimidating, From the Agency and AFGE, I don't know what i

these were a few of the people listed in that email:
1. Brenda Cammon (EEO Counselor)
2. Abner Merriweather (Union president)
3. Thompson, Jennifer ( EEO Director)
4. Chanley Pickard ( EEO Counselor)
5. Theodora Stewart, (Union Assistant, and second only to the Union President)
6. Palmer Milton-Walker, R CIV USARMY HQDA ACA (US) ( Union Executive Vice President)
7. Charlotte Cloud (Agency Management Employee, MER, Assistant Director)
8. Fitzpatrick, Kimberly D (MER representative)
9. Everett Kelley ( AFGE 5th District Present)
10. Kevin Harper ( AFGE 5th District manager)

If the agency want to know where some of the collusion comes between them and AFGE it is here in exhibit 6 (highlighted).

Even after this Army Business Invitee, Business Contracting Partner said, showing such a Abdication of Duty to Care in this correspondence Not one of the AFGE, EEO or Agency Human Resources MER employees reach out to me about it. Instead, the next thing that followed was Jennifer Thompson EEO Final Agency Decision (FAD) telling me that they were dismissing my complaint, even without listing all the claims to actually do so.
To say more the Army agency at no time made it known to this commission that it objected to AFGE

using their equipment, the commission can see from the Agency lack of mention this point in their Brief that they have been completely cavalier about it, only to illustrate that it was not a problem ...

## ARMY, AFGE LOCAL 1858 AND AFGE 5TH DISTRICT ARE JOINT TORTFEASORS

The Agency stated that my Title VII discriminatory claim is Union activity and not Army related, but that is absolutely true. Incidentally it should be noted that the Union president, as relates to AFGE Local 1858, is the only position where the Army Agency officially allows the AFGE Union president to work 85% percent of his time during Union duties. As such the hours of duty of the Union President relative to Army hours are INEXTRICABLY connected at all hours of the day and night and as such are intangible relative to distinction between the two, at any given time of the day or night so the Union president is continuously on Army pay roll doing Army and/or Union business on and off post all hours of the day. The Union president has frequently told Union members that his position is equal to that of a General. Generals are accountable on and off post at all times and as such actions relative to conduct are always totally accountable to the Union, especially those that occur on the Army land and or with Army Chattel/employees.

Because the Army signed a business contractual relationship with a Union, and agreed to pay for the Union president to do Union business using 85% of Army duty time does not give away its duty of care for its employees, this is particularly addressed in *Rowland v. Christian* which I will address below. But for now it should be noted that 85% of Army Duty time means that 85% of whatever Union business the Union president is doing is being done on the payroll by the Army, and the 15% is equally on Army pay roll time, otherwise the Union president would be required to take personal leave to do Union business, which he is not ... and that may be for a recent EEOC ruling or mediation involving this Union president.

Recently this Union President, Abner Merriweather, who has committed this sexual harassment act against me, who removed me from my position because of my opposition to his relentless and unwelcome sexual advances, has told to Union members that he recently won an EEOC case against the Agency, through mediation or EEOC appeal ruling, where the Army gave him back his personal leave he was using to do union business and substitute it with official Army time for duties that he worked on and off the Army Land, relative to the Union, beyond the official hours that other Army employees who are not Union presidents work. As such this in and of itself illustrates that the Army duty hours for the Union president is not restricted to the same hours as that of other Army employees who are not Union president, and who cannot use 85% percent of their Army official time to do Union matters.

Duty of Care for Safety is well outlined in *Rowland v. Christian.* Under *Rowland v. Christian*, the court eliminated the distinction between business invitee, licensee, and trespasser, and found that the land occupier, (in this case the Army as its owns the land), owes a duty to act as a "reasonable man" for the purposes of rendering the occupied property **SAFE FOR OTHERS**. Safe by definition here would mean that the Army's owes a Duty of Care to its employees to be free from retaliation pursuant to the commissions regulation of 29 CFR 1614.101(b) from its Business contractual partners on its Army land. In the Agency's argument that the Union President and I, although working for the same employer, work in two different group organizations and so are unrelated; they went on to say that since we do not work for the same supervisor then we cannot reasonable be considered coworkers. But the Agency counselor position on this is myopic.

We, those that work for the Army, are supervised by Army management personnel but we still work for the Army. If person B were ask person A where they worked, and person A works for The Boeing

9

Company, person A would not say they work for Kim Fields their supervisor, person A would say they work for Boeing; if person B were ask person A where they worked, and person A works for The EEOC, person A would not say they work for Jim Bodie the supervisor, person A would say they work for EEOC; if person B were ask person A where they worked, and person A works for The Walmart, person A would not say they work for Tanzania Washington the supervisor, person A would say they work for Walmart. Equally, if person B were ask person A where they worked, and person A works for The United States Army, person A would not say they work for Denzel Washington the supervisor, person A would say they work for the Army

I as an engineer I may not consider that I am CO-worker of someone who is the custodian profession at the same company or organization because our Positions Descriptions (PD) will probably be different and not of the same series; therefore, by profession of the description of our Positions Descriptions (PD) we will not both by PD work on engineering jobs. But if I work for the same company, organization and our PD's are collocated in the Army series title as GS-13 engineering and the departments we work within are also engineering and we are on the same Army land of the company we work for, and we know and interact with one another, even discussing engineering theories, I would by definitely consider that person a coworker who is of the same company, and the same discipline. By definition a coworkers is defined as: Generally, coworkers engage in similar work and occupy similar roles within an organization. The Union president and I are both engineers, both our Positions descriptions are engineering, we both work for the same employer (the Army). But relative to the case law of _Palsgraf v. Long Island Railroad_ (to be discussed later in this Brief) this is of no consequence.

## THE ARMY DUTY OF CARE OWED TO ITS EMPLOYEES
Every morning the Army management does accountability for all the army employees to make sure that its employees have in fact arrived to work safely; so it is with Judicial notice that I state that we are in fact employees of the United States Army.

AFGE is a guess, not Land owner, onto the Army owned land installation where this incident, particularly the retaliation, took place. Although the Union president and I work in different locations we nevertheless work on the same Army land instillation. As such, the AFGE labor organization is by definition a Business Invitee, or a Business partner of the US Army, doing business with Army for the betterment of Army supervised employees. Just because the Army invites a guest, or is contractual partnership with a UNION on its installation and doing business accordingly, that does not relieve the Army of their Duty of Care to its employees as relates 29 CFR 1614.101(b). That considering, the Army owes a duty of care to me, the employee of the Army, from its Business partners (AFGE), who works on the land owned by the Army. As such I am reasonably expected to rely on the Army's adherence to 29 CFR 1614.101(b), as its employee, for its Duty of Care regardless of who is the Army Business Invitee or who is the Army's Business contractual partner. We are Army employees, this is Army land, as stated previously, the Army may indemnify its Business Invitee or Business Contractual partner AFGE Local 1858 and/or AFGE 5th district relative to being Joint Tortfeasors to figure out who was liable most, but ultimately we are Army chattel and/or Army employees and as such the Army cannot abdicate its Duty of Care relative ( as it witness AFGE do in exhibit 6) to its chattel and/or Army employees safety, retaliation in this case, nor reasonably expect to be excluded from their Duty of Care owed by them to chattel and/or Army employees on Army land. As stated earlier, that is the conceptual point behind the case law of _Rowland v. Christian_ when the court eliminated the distinction between business invitee, licensee, and trespasser, and found that the land occupier/land owner owes a duty to act as a "reasonable man" [ reasonable land owner] for the purposes of rendering the occupied property **SAFE**

**FOR OTHERS.**

The position of the Agency on me and the Union president work location parallels, to a conceptual understanding, the position of Justice Cardozo's in the *Palsgraf v. Long Island Railroad* case. There Justice Cardozo's position was that one has to be in the orbit of danger, or in this case, that the Union president and I have to work for the same supervisor in the same command in order that I have a justifiable complaint ... but this is to say the least a contrary position of the courts today. The obscurity of Justice Cardozo's position is made particular clear in the dissenting position of Justice Andrews in *Palsgraf v. Long Island Railraad* case, a position that is now accepted as the norm an acceptable position by today's courts.

Under Justice Andrews's position if the defendant (in this case it would be the United States Army) owes a duty to anyone then he owes a duty to everyone (anyone victimized under their care subjected to Title VLL sexual harassment/sexual assaults) who could foreseeably be injured by his action. The scenario for my case of Agency case number ARREDSTON17MAY01829 and that of *Palsgraf v. Long Island Roilroad* are different **BUT THE CONCEPT RELATIVE TO THE REASONING OUT OF THE CASE IS ABSOLUTELY THE SAME**. In other words, relative to my case, if Army employee B works for Army command B and Army employee C works for Army Command C and Both work for parent employer Army per se, then if Army employee B sexually assaults or sexually harasses Army employee C then Army employee C may state a claim relative to the Army for vicarious liability because both B and C work for the same employer, and the Army per se has a Duty owed to the victim who had brought the claim of sexual harassment and or sexual assaults against that Army employee. As a point of reason, if EEO claims are restricted to the commands that the Army employee works, as the Agency is saying in their Brief to the commission for Agency Final Agency Decision (FAD) dated September 7, 2017, which would be parallel to Justice Cardozo's position in *Palsgraf v. Long Island Railrood*, then an Army employee can only seek a Title VII redress of their Army employer if and only if the sexual Assault or sexual harassment takes place in the same command ... So that if Army employee "A" works in one area on the Army land and Army employee "B" in another, then Army employee "B" could sexually assault and/or sexually harass another Army employee from another command or area without the threat of liability ... such a position as this, as the Army is taking in its Brief, sounds, ***to put it mildly***, very unreasonable, particularly relative to the victimized victims of sexual harassment and sexual assaults; nevertheless, and pursuant to the Agency Final Agency Decision (FAD) dated September 7, 2017, this is the position of the Army, this is how they view sexual assaults and/or sexual harassment cases .... That is why they, along with the EEO just look at their Business partner in exhibit 6 and said nothing to me, offering tacit approval, and then issuing me a dismissal of my complaint.

**Sexual Assault Happened Off Army Land, But By Army Chattel/Employee, On Army Duty Time**
Although the initial sexual assaults for which I filed an EEO complaint with eh Army agency did not take place on the Army land it was committed by an Army chattel, meaning it was committed by an Army employee, during the extended duty hours granted to the that Army employee, the Union President, by the Army. We as Army employees are in fact, during duty hours, Army chattel, and because the Army allows the Union President to use 85% percent of his time on union matters, the only position like that permitted to do so by the Army for this Union, then it is qualifiable to say that the Union president was committing this offense during the unique privilege extended Army duty hours, granted to him by the Army.

**AGENCY CONTENTION THAT MY TEXT MESSAGES ARE PRIVILEGE**
The text messages that the Agency say are privilege are not privilege because, first I am the plaintiff

and they are my text messages, so if I want to release them, and I do, I release them; second, prior to The Union president texting me at 3am on May 31th 2017 after the incident admitting to sexually harassing me, he sent me an initial text message on May 30th 2017 at 7:38 pm, and in that Text message he released himself as my EEO representative( see exhibit 7). So on May 30th 2017, he was no longer my representative, and on May 31th 2017 he admitted to sexual harassing me in a text message and would not stop when I rapidity told him, about 15 to 20 times, to stop. His reasoning or not stopping, in the same text message, was because he did not like the way I ask him to stop. Obviously he has not supplied this information to the Agency as they, and so the Agency seems to missed that part in defending him, which is why they though his communication with me were privilege. Had there been a proper investigation and processing of my claims as required by 29 CFR 1614.108(b) where it states, "in accordance with instructions contained in Commission Management Directives, the agency shall develop an impartial and appropriate factual record", the commission would have such information from the investigation (but I'm happy to provide it here in exhibit 7)

### RELIEF REQUESTED FOR THE AGENCY RETALIATION IN ARREDSTON17MAY01829 COMPLAINT

As relief for the agency improperly dismissing my claim, I request that this Commission:

1. Because this is nothing more than Retaliation, for Agency case number ARREDSTON15AUG04058 that is before EEOC Administrative Judge (AJ) Mason Barrett and Agency case number ARREDSTON13JUN02070 that is before the US Federal court, which is out lawed by Title VII section 42 U.S.C. 2000e-3 et seq, and the commissions regulations relative to 29 CFR 1614.101(b). I request that I request that the commission award me the relief requested in my formal DA Form 2590 for Agency case number ARREDSTON17MAY01829 COMPLAINT the amount of $300,000

If the agency does not award me the ARREDSTON17MAY01829 COMPLAINT the amount of $300,000I request the following:

2. Accept ALL claims that I have filed with the Agency EEO office for ARRED5TON17MAY01829 COMPLAINT
3. Order an investigation into each and every claims that I have filed with the for case ARREDSTON17MAY01829 as outlined in 29 CFR 1614.106(d)
4. Grant me an unchallenged EEOC Hearing after the investigation is complete for case number ARREDSTON17MAY01829
5. Sanction the Agency $100,000 dollars or an amount the commission feels appropriate for the Agency violating the numerous commission regulations;

Respectfully,

HAWTHORNE.DAVID.1407453073
Digitally signed by HAWTHORNE.DAVID.1407453073
DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=USA, cn=HAWTHORNE.DAVID.1407453073
Date: 2017.09.15 14:25:05 -05'00'

David Hawthorne, DML
Electrical, General,
and Systems Engineer
Juris Doctor (J.D.) candidate
1st year Law School
LIBS/EDXRF Project Lead
USAMC LOGSA, GSC AOAP
Phone: 256-955-7948
david.hawthorne8.civ@mail.mil

## CERTIFICATE OF SERVICE

I certify that on September 14, 2017, the *foregoing Plaintiff Brief to Office of Federal Operations SAMR-EO-CCR replying to the Agency Final Agency Decision (FAD)* was sent via email(s) and/or mailed to the following:

Mae N. Perkins
AFGE Local 1858
Abner Merriweather's Union Office Administrator
mae.n.perkins.ctr@mail.mil

Michelle Robinson Perrin
Logistics Support Activity Union Vice President
and AFGE Local 1858 Executive Board member
michelle.r.perrin.civ@mail.mil

Tish Ash, Army EEO Specialist
EEOCCR - Compliance and Intake Section
Department of the Army,
Director, EEO Compliance and Complaints Review
ATTN: SAMR-EO-CCR, Bldg 214
5825 21st Street, Room 113
Fort Belvoir, VA 22060-5921
patricia.l.ash2.civ@mail.mil

Rufus B Caruthers, Jr CIV IMCOM HQ
Army Agency EEO Director of Directors
rufus.b.caruthers.civ@mail.mil

Palmer Milton-Walker
Executive Vice President AAFGE Local 1858
Member of the AFGE Local 1858 Executive Board
palmer.r.milton-walker.civ@mail.mil

Department of the Army,
Director, EEO Compliance and Complaints
Review ATTN: SAMR-EO-CCR, Bldg 214
5825 21st Street, Room 129
Fort Belvoir, VA 22060-5921

HAWTHORNE.DAVID.140745 3073
Digitally signed by HAWTHORNE.DAVID.1407453073
DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=USA, cn=HAWTHORNE.DAVID.1407453073
Date: 2017.09.15 14:25:29 -05'00'

Respectfully,
David Hawthorne, DML
Electrical, General,
and Systems Engineer
1st year law, Juris Doctor (J.D.) candidate
LIBS/EDXRF Project Lead
USAMC LOGSA, GSC AOAP
Phone: 256-955-7948
david.hawthorne8.civ@mail.mil