FILED
2020 May-29  PM 12:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DAVID HAWTHORNE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:18-cv-00689-MHH** |
| | } | |
| **RYAN D. MCCARTHY, Secretary** | } | |
| **of the Army, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER[1]

The United States Army has asked the Court to dismiss this federal-sector civilian employment discrimination action.  (Docs. 83, 89).[2]  So have the union defendants:  David Cox, David Mollet, and Abner Merriweather.  (Doc. 79).  Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the defendants challenge this Court's subject matter jurisdiction over David Hawthorne's claims against them.  And if the Court has jurisdiction, then the defendants ask the Court to

---

[1] The Court is issuing this opinion during a declared national emergency concerning COVID- 19. To enable parties to pursue their rights during this emergency, the Court is continuing its work. For information about the timing of appeals, please review the information provided in the conclusion of this opinion. The Court is including this procedural information in each opinion that it issues during the national emergency.

[2] The Army is sued by and through the Secretary of the Army.  Mr. Hawthorne named Mark Esper as the Secretary of the Army in his amended complaint.  (Doc. 73, p. 2).  Ryan D. McCarthy is the current Secretary of the Army, so the Court has substituted Mr. McCarthy for Mr. Esper.  *See* Fed. R. Civ. P. 25(d) (When a public officer ceases holding office, that "officer's successor is automatically substituted as a party.").

dismiss Mr. Hawthorne's claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.   For the reasons discussed in this opinion, the Court finds that it has jurisdiction over this matter.  Pursuant to Rule 12(b)(6), the Court will grant the union defendants' motion to dismiss and will grant in part and deny in part the Army's motion to dismiss.[3]

## I.   STANDARD OF REVIEW

Rule 12(b)(1) enables a defendant to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  In the absence of subject matter jurisdiction, a district court may not hear a case.  *Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir. 1999).  Consequently, when a defendant pursues "a Rule 12(b)(1) motion [] in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)).[4]

---

[3] Mr. Mollett also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(4) and (5), for insufficient process and insufficient service of process, respectively.  Because Mr. Hawthorne has abandoned his claims against the individual defendants (*see* Doc. 80, pp. 14–15, ¶40), there is no need to discuss these rules.

[4] The *Hitt* decision is binding authority in the Eleventh Circuit Court of Appeals.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent in the Eleventh Circuit Court of Appeals decisions that the Fifth Circuit Court of Appeals rendered before October 1, 1981).

Attacks on subject-matter jurisdiction under Rule 12(b)(1) may be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (citing *Carmichael,* 572 F.3d at 1279)); *see also*, *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact." *McElmurray*, 501 F.3d at 1251 (internal quotations and citations omitted). "[W]here a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 572 F.3d at 1279. "In so doing, a district court may weigh the facts, and the court is "not constrained to view them in the light most favorable" to the plaintiff." *Houston*, 733 F.3d at 1336 (quoting *Carmichael*, 572 F.3d at 1279)).

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007).   Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).   "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'"  *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)).   "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations."  *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012).   "Where those two requirements are met . . . the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."  *Id.*

This is particularly true with respect to *pro se* complaints.   Courts must liberally construe *pro se* documents.   *Erickson*, 551 U.S. at 94.   "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson*, 551 U.S. at 94 (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976)); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Still, a district court "may not serve as de facto counsel for a party, or … rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the factual allegations in the complaint – or in this case, the amended complaint – and construes the factual allegations in the light most favorable to the plaintiff, *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018), but "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations," *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). Accordingly, in this opinion, the Court presents the factual allegations in the amended complaint in the light most favorable to Mr. Hawthorne and draws all inferences from the factual allegations in his favor. As the case proceeds, the evidence may, or may not, differ from the factual allegations in Mr. Hawthorne's amended complaint.

## II.    ALLEGATIONS IN THE AMENDED COMPLAINT

Mr. Hawthorne is an engineer and a civilian federal employee at the United States Army Sustainment Command located at Redstone Arsenal near Huntsville, Alabama.  (Doc. 73, p. 2, ¶ 1).  Mr. Hawthorne is a member of both the American Federation of Government Employees, a national union that represents government workers, and the local chapter of that union, Local 1858 which is part of District 5 of the national union.  (Doc. 73, p. 3, ¶ 7).  (Doc. 73, p. 7, ¶ 23).

### A. <u>Alleged Sexual Harassment by Abner Merriweather</u>

Mr. Hawthorne contends that Abner Merriweather, the president of Local 1858, and an employee of the Army's Aviation and Missile Research Development and Engineering Center, sexually harassed him and subjected him to a hostile work environment.  (Doc. 73, p. 2, ¶ 1).  Mr. Hawthorne alleges that Mr. Merriweathwr began harassing him on March 20, 2017.  (Doc. 73, p. 3, ¶ 2).  On that date, Mr. Merriweather asked Mr. Hawthorne to accompany him to a casino in Mississippi. (Doc. 73, p. 3, ¶ 2).  Mr. Hawthorne "told [Mr. Merriweather] no, and went on to say that [Mr. Merriweather] should take his lady to that event, and not to ask [Mr. Hawthorne] about such a thing."  (Doc. 73, p. 3, ¶ 2).

On May 8, 2017, Mother's Day, Mr. Merriweather sent a group text to Mr. Hawthorne, and others, that said "Happy Mother's Day."  (Doc. 16-8, p. 7; Doc. 73,

p. 3, ¶ 3).[5]  Mr. Hawthorne responded by text: "Abner I know you play a lot, but I don't like the gay jokes in any form or fashion. There is nothing funny, playful or amusing about what you just said . . . Leave me out of the gay jokes . . . ."  (Doc. 16-8, p. 7; Doc. 73, p. 3, ¶ 3).  Mr. Merriweather apologized and wrote that "he would never do anything like that again."  (Doc. 73, p. 3, ¶ 3).[6]

During a May 20, 2017 phone conversation with Mr. Hawthorne, Mr. Merriweather asked Mr. Hawthorne to come to Mr. Merriweather's home and cook for Mr. Merriweather.  (Doc. 73, p. 3, ¶ 4).  Mr. Hawthorne alleges that he

> explicitly told [Mr. Merriweather] that he needed to ask his lady to do that and not to be asking me about such things. I told him that it sounded like a gay request, and that a man should ask his lady or a lady should ask her man to do those things. I went on to tell him that he should not be asking me and to stop.

(Doc. 73, p. 3, ¶ 4).

---

[5] Page 7 of Doc. 16-8 is a copy of Mr. Merriweather's text message, and Mr. Hawthorne's response, that is referenced in, but not attached to, the amended complaint.  It is part of an exhibit filed by Mr. Hawthorne on June 15, 2018.  This Court may consider documents that Mr. Hawthorne referenced in his amended complaint without converting the defendants' motions to dismiss to motions for summary judgment, even though the documents are not physically attached to the amended complaint, if the documents are central to the complaint and no party questions their authenticity.  *Madura v. Bank of Am., N.A.*, 767 Fed. Appx. 868, 870 (11th Cir. 2019) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).  "A document is central to a complaint when it is a "'necessary part of [the plaintiff's] effort to make out a claim.'"  *Madura*, 767 Fed. Appx. at 870 (quoting *Day*, 400 F.3d at 1276).  The text message is a part of Mr. Hawthorne's effort to make out a claim of harassment, and to date, no party has objected to it.

In his amended complaint, Mr. Hawthorne refers to many such documents.  To the extent that those documents appear in the record of this case without objection, the Court has considered them for purposes of this opinion.

[6] The Court has not located Mr. Merriweather's reply email in the record.

At a bar on May 22, 2017, Mr. Merriweather approached Mr. Hawthorne and began telling another nearby patron that Mr. Merriweather had asked Mr. Hawthorne "to go on a cruise with him." (Doc. 73, p. 3, ¶ 5). Mr. Hawthorne immediately walked away from Mr. Merriweather and the patron. (Doc. 73, p. 3, ¶ 5). The next day, Mr. Hawthorne sent Mr. Merriweather a text saying that Merriweather knew that "he did not ask me and/or my lady to go on a cruise with him . . . and not to lie on me or even ask me such a thing." (Doc. 73, p. 3, ¶ 5). That same day, Mr. Merriweather responded by texting an apology "for lying," and "said he would not do that again." (Doc. 73, p. 3, ¶5). Later, by text, Mr. Merriweather called Mr. Hawthorne "too sensitive." (Doc. 73, p. 3, ¶ 5).

On May 26, 2017, at the Local 1858 office, Mr. Merriweather asked Mr. Hawthorne to accompany Mr. Merriweather on a cruise for just the two of them. (Doc. 73, p. 3, ¶6). Mr. Hawthorne declined and told Mr. Merriweather "not to ask me something like that because . . . that is something a person ask[s] of their companion." (Doc. 73, p. 3, ¶ 6).

Mr. Hawthorne was recruiting new union members at a local bar on May 30, 2017, when Mr. Merriweather approached and began calling Mr. Hawthorne "[h]is Boo Boo," and telling Mr. Hawthorne "you know you are my Boo Boo." (Doc. 73, p. 3–4, ¶ 7). This continued despite Mr. Hawthorne telling Mr. Merriweather to stop "15 to 20 times." (Doc. 73, p. 3, ¶ 7). Mr. Hawthorne then moved to another seat,

but Mr. Merriweather followed and continued to call Mr. Hawthorne "[h]is Boo Boo," sometimes whispering it. (Doc. 73, p. 4, ¶ 7). This continued even after two bar patrons intervened and asked Mr. Merriweather to stop. Mr. Hawthorne eventually left. (Doc. 73, p. 4, ¶ 7).

The next morning, May 31, 2017, at 3:00 a.m., Mr. Merriweather sent a text to Mr. Hawthorne about the previous day's incident. (Doc. 73, p. 4, ¶ 8). At 3:30 a.m. that same morning, Mr. Hawthorne responded and asked Mr. Merriweather not to text him again. (Doc. 73, p. 4, ¶ 8; Doc. 16-8, p. 5). The text continues, in pertinent part:

> I told you to [s]top calling me that. It was offensive it was sexual [i]n nature, it was in fact to me sexual harassment. Only the day before, or two days before, with Judy on the phone you ask[ed] me to cook for you, [I find that] homosexual in nature too. And I was offended by it as was illustrative [sic] in my reply to you with Judy in the phone.

(Doc. 16-8, p. 5; *see also* Doc. 73, p. 4, ¶ 8). Mr. Merriweather replied by text 15 minutes later saying "[e]verything [you] said above is correct, it was the manner [in which you] said it to me in a bully[ing] and dictating way . . . please don't text me again." (Doc. 16-8, p. 4; *see also* Doc. 73, p. 4, ¶ 8). In another text, Mr. Merriweather accused Mr. Hawthorne of "coming over to [and] physically threatening [Mr. Merriweather]." (Doc. 16-8, p. 4). Mr. Merriweather also apologized for calling Mr. Hawthorne "his Boo Boo." (Doc. 16-8, p. 4).

**B. Mr. Hawthorne's Sexual Harassment and Reprisal EEO Complaint Concerning Mr. Merriweather's Alleged Conduct**

On May 31, 2017, Mr. Hawthorne submitted to the Army's Office of Equal Employment Opportunity a sexual harassment complaint against Mr. Merriweather. (Doc. 73, p. 5; Doc. 73-1, pp. 1–2).  Mr. Hawthorne alleges that he brought the May 31, 2017 EEO complaint "pursuant to 42 U.S.C. 2000e-2(a) *et* seq."  (Doc. 73, p. 20, ¶ 81).  The factual basis for this EEO complaint was Mr. Merriweather's conduct the previous day, and Mr. Merriweather's request that Mr. Hawthorne cook for Mr. Merriweather.  (Doc. 73, pp. 5, 16; Doc. 73-1, p. 2).

Because he was the local union president, the EEO office listed Mr. Merriweather as his own supervisor on forms related to Mr. Hawthorne's EEO complaint.  (Doc. 73, p. 16, ¶ 66).  Mr. Hawthorne argued that Mr. Merriweather was acting in his capacity as an employee of the Army, as well as the local union president, when the events occurred.  (Doc. 73, pp. 16-17, ¶¶ 66–68).  On June 5, 2017, Mr. Hawthorne emailed the Army's EEO office and complained that Mr. Merriweather's Army supervisor should be notified.  (Doc. 73, pp. 16-17, ¶¶ 66–67).  The EEO office did not do so.  (Doc. 73, p. 16, ¶ 66).

In correspondence dated June 5, 2017, Frank G. Alfano, counsel for Mr. Merriweather, accused Mr. Hawthorne of making

> false and defamatory allegations . . . in email correspondence to Judge Mason Barrett and Victor R. Donovan on Wednesday May 31, at 11:52 AM.  These allegations include, but are not limited to, the following:

"On more than one occasion Mr. Merriweather has sexually harassed me after repeated efforts to stop."  In the same email you also state, "In any case I've filed a complaint with the EEO office."

(Doc. 73-5, p. 33; *see also* Doc. 73, p. 55, ¶ 210).  The letter demanded that Mr. Hawthorne make a public retraction or face a civil defamation suit.  (Doc. 73-5, p. 33).

On June 13, 2017, Mr. Hawthorne sent an email to union executives at District 5 and to the executive board of Local 1858, informing them of the complaint he had filed against Mr. Merriweather and asking that they remove Mr. Merriweather from his position as Local 1858 president pending the outcome of the investigation into the complaint.  (Doc. 73, pp. 18–19, ¶¶ 72, 79; Doc. 73-5, p. 2).

Until June 13, 2017, Mr. Hawthorne had served as the local union assistant vice president for the Logistics Support Activities – "LOGSA" employees.  (Doc. 16-8, p. 2).  On June 13, 2017, Mr. Merriweather removed Mr. Hawthorne from the position, stating:

> This action has been taken because on numerous occasions you have made slanderous and untrue accusations against this . . . [p]resident to individuals in person and in writing. You have also conducted a personal vendetta against this [p]resident in order to denigrate my reputation and my position as . . . [p]resident.  [I]t is my intent to prefer charges against you with the Local Executive Board who shall appoint a Committee of Investigation for you engaging in conduct unbecoming a union member.

(Doc. 16-8, p. 3; *see also* Doc. 73, pp. 18, 20, ¶¶ 74, 80).  On June 14 or 15, 2017, Mr. Hawthorne, via an email message to EEO counselor Brenda Joyce Cammon,

amended his EEO complaint to also add that Mr. Merriweather had removed him from his union position in reprisal for the filing of the initial complaint.  (Doc. 73, pp. 19, 20, ¶¶ 79, 81, 84; Doc. 73-1, p. 2).

Ms. Cammon interviewed Mr. Merriweather on June 14, 2017.  During the interview, Mr. Merriweather acknowledged calling Mr. Hawthorne "his Boo Boo," but stated that he did not realize that Mr. Hawthorne felt that the term was sexual in nature.  (Doc. 73, p. 6, ¶ 17; Doc. 73-1, p. 4).  Mr. Merriweather stated that he was shocked when Mr. Hawthorne got upset, explaining that the two were friends and often "clowned around."  (Doc. 73, p. 6, ¶ 17; Doc. 73-1, p. 4).  According to Mr. Merriweather, Mr. Hawthorne became angry, "was hovering over [Mr. Merriweather] in an aggressive manner," and was touching Mr. Merriweather.  (Doc. 73-1, p. 4).  Mr. Merriweather stated that he became angered at Mr. Hawthorne's reaction, so he continued to call Mr. Hawthorne "his Boo Boo," even after the two were separated.  (Doc. 73, p. 6, ¶¶ 17–18; Doc. 73-1, p. 4).[7]  Mr. Merriweather denied asking Mr. Hawthorne to cook for him.  (Doc. 73-1, p. 4).

Mr. Merriweather "indicated" to the EEO counselor that he removed Mr. Hawthorne from the union position because Mr. Hawthorne filed the sexual harassment complaint against Mr. Merriweather.  (Doc. 73-1, p. 4).  The EEO

---

[7] Mr. Merriweather could not recall two bar patrons asking him to stop calling Mr. Hawthorne "his Boo Boo."  (Doc. 73-1, p. 4).  He remembers only an unknown individual separating the two.

counselor's report states that Mr. Merriweather said that he "wouldn't feel comfortable meeting with [Mr. Hawthorne] alone."  (Doc. 73-1, p. 4).

In his amended complaint, Mr. Hawthorne alleges that on June 19, 2017, he contacted the Army EEO office regarding the correspondence from Mr. Alfonso and asked that an additional claim of "obstruction" be added to his (Mr. Hawthorne's) EEO complaint.  (Doc. 73, p. 21, ¶ 86).  Mr. Hawthorne's email to Ms. Cammon states:

> would like to file an additional . . .  complaint of retaliation against the Agency and/or . . . Local 1858 and/or [the] 5th District for . . .  creating a hostile and intimidating work environment along with ENDEAVORS TO INFLUENCE me to drop my sexual harassment [complaint] against Abner Merriweather[.]

(Doc. 73-5, p. 8; *see also* Doc. 73, p. 21, ¶ 86; Doc. 73-1, p. 7) (capitalization in original).  In that email, Mr. Hawthorne referred to Mr. Alfonso's June 5, 2017 letter as "obstruction of justice and [a] threat to intimidate a witness."  (Doc. 73-5, p. 9). The email continued: "I am asking the EEO office to add the claim of obstruction of Justice . . . against Abner Merriweather, . . . Local 1858, [the] 5th District and the Army Agency."  (Doc. 73-5, p. 9).  Mr. Hawthorne also stated that he "would like to file these additional base complaints of retaliation against the Agency and/or . . . Local 1858 for claims of creating a hostile, intimidation and/or creating a work environment [sic] pursuant to Title VII's 42 USC 2000e-3(a)."  (Doc. 73-5, p. 9; *see also* Doc. 73-1, p. 8).  Continuing, Mr. Hawthorne wrote:

> I would also like to make the claim that the employer and/or . . . [L]ocal 1858 (executive board as has been notified) and or the Army Agency participated in . . . [local union] [p]resident and Army employee Abner Merriweather['s] retaliation against me when they did not take proper action to restrict Abner Merriweather's duties as [the] UNION [p]resident and /or [an] Army Employee.

(Doc. 73-1, p. 8; Doc. 73-5, p. 9).  According to the email, this "continued to create a hostile and intimidating work environment while also encouraging the union [p]resident and Army Employee Abner Merriweather['s] obstruction."  (Doc. 73-1, pp. 8–9; Doc. 73-5, p. 9).  Mr. Hawthorne ended:

> So Ms. Cammon please file this additional claim of Army Agency and/or . . . Local 1858 Executive Board and/or . . . [the] 5th District creating a hostile and intimidat[ing] work environment pursuant [to the] letter from Abner Merriweather['s] [l]egal office.

(Doc. 73-1, p. 10; Doc. 73-5, p. 11).  Chanley Pickard, an Army EEO specialist, responded to Mr. Hawthorne's June 19, 2017 email the same day, writing: "your email is Acknowledged [sic], this claim will be added to your current [complaint]. (Doc. 73, p. 55, ¶ 211; Doc. 73-1, p. 6).

On June 22, 2017, Michelle Perrin, the LOGSA union vice president, sent the following email to the Local 1858 Executive Board:

> I know that you all are aware of the fact that Mr. David Hawthorne filed an EEO complaint [against] President Abner Merriweather. I will be Mr. Hawthorne's Representative in his EEO case. Mr. Hawthorne was removed from his duties for engaging in conduct unbecoming a union member per Article XXIII, Section 2(e) of the American Federation of government Employees AFL-CIO Constitution, dated August 2015. Mr. Hawthorne was within his rights as a bargaining unit employee to file a complaint. It just so happen[s] that the complaint was filed against

the President of Local 1858. I want to make sure that Mr. Hawthorne was removed for the right reasons and not just because he filed a complaint against the [p]resident. I am requesting that the Executive Board look into this matter.

(Doc. 73-5, p. 1; *see also* Doc. 73, pp. 21–22, ¶ 89).

On June 27, 2017, Everett Kelly, who is the national vice president for District 5, wrote the following in an email to Theodore Stewart, assistant president of Local 1858:

I sent all the documents to the National office seeking advice as it relates to brother Hawthorn[e]'s allegations. It is the opinion of the [a]ttorney after going through all the attachments that this does not rise to the level of unlawful sexual harassment. The [a]ttorney [i]ndicated that some would say that there are no sexual connotations to the name "boo boo". But even if there were, three times is not frequent and it is not severe/egregious. It is my opinion that there is nothing for any of us to do at this time.

(Doc. 73-5, pp. 17–18; *see also* Doc. 73, p. 22, ¶¶ 90–91).

On July 14, 2017, EEO Director Jennifer S. Thompson issued the Army's "final decision" dismissing Mr. Hawthorne's EEO complaint "in accordance with 29 CFR 1614.107(a)(1) and AR 690-600 Chapter 4, Section II, 4-4a(1)" for "failure to state a claim." (Doc. 73-9, pp. 28-33; *see also* Doc. 73, pp. 7, 26, ¶¶ 23, 103; Doc. 73-1, pp. 20–25). In her written opinion, Director Thompson noted that Mr. Hawthorne's complaint "alleged Reprisal for previous EEO activity (ARREDSTON17MAY01829) and discrimination on the bases of Sex (male)." (Doc. 73-9, p. 28; *see also* Doc. 73-1, p. 20). She also noted that Mr. Hawthorne

15

based his claims only on Mr. Merriweather's rescinding Mr. Hawthorne's appointment as assistant vice president of Local 1858 LOGSA employees, the incident at the bar on May 30, 2017, and Mr. Merriweather's alleged request that Mr. Hawthorne cook for Mr. Merriweather. (Doc. 73-1, p. 20; Doc. 73-9, p. 28). In other words, in her written opinion, Director Thompson did not expressly acknowledge all of the additional claims Mr. Hawthorne set out in his email of June 19, 2017, and which Ms. Pickard stated would be added. Director Thompson wrote:

> The Commission has long defined an "aggrieved employee" as one who suffers a present harm or loss in respect to a term, condition, or privilege of employment for which there is a remedy. According to Smith v. Veterans Affairs, EEOC Appeal No 01A32477, actions by union officer against union official fail to show an agency action adversely affecting Complainant's terms, conditions, or privileges of employment due to the alleged action of the agency for which there is a remedy. See Diaz v. Department of the Air Force, EEOC request No. 02931049. The alleged discrimination actions were not within the purview of EEOC regulations if the alleged discriminating union officials were acting in their representational capacity.

(Doc. 73-9, pp. 28–29; *see also* Doc. 73, p. 25, ¶ 101; Doc. 73-1, pp. 20–21).

Mr. Hawthorne appealed Director Thompson's decision to the Equal Employment Opportunity Commission's Office of Federal Operations, and he filed an EEO complaint against Director Thompson. On September 7, 2017, the Army filed its brief in opposition to the appeal. (Doc. 39-1, pp. 214–28). In the amended complaint, Mr. Hawthorne calls this brief a Final Agency Decision or "FAD". (Doc.

73, p. 26, ¶ 103) (citing Doc. 39-1, p. 214).[8]   The brief uses language like the language Director Thompson used in her opinion, including that "[a]s a general rule, discriminatory actions are not within the purview of EEOC regulations if the alleged discriminating union official acts in his or her representational capacity."  (Doc. 39-1, p. 217).

On November 21, 2017, the OFO affirmed the agency's decision, writing that "[a]s [Mr. Hawthorne] is challenging actions directly related to his position within the union, he must raise this claim within the union grievance process."  (Doc. 73-3, p. 17).  The OFO affirmed dismissal of the sexual harassment and hostile work environment claims, stating that "[t]he actions alleged, without more, concern isolated incidents that are simply insufficiently severe or pervasive to state a valid hostile work environment claim."  (Doc. 73-3, p. 17).[9]

Mr. Hawthorne had 30 days from the date he received the EEOC's denial to seek reconsideration.  (Doc.73-1, p. 21).  In an April 11, 2018 email, Mr. Hawthorne requested that the OFO reconsider its decision.  (Doc. 73-3, p. 21).  In his request for reconsideration, he asserted that he did not receive the denial until April 10, 2018.

---

[8]  Counsel for the Army explained Mr. Hawthorn's misnomer to him in an email dated October 19, 2017.  (Doc. 73-3, p. 14; Doc. 73, p. 28, ¶ 111).

[9] The OFO also stated that to the extent that Mr. Hawthorne was "challenging actions directly related to his position within the union, he must raise this claim within the union grievance process."  (Doc. 73-3, p. 17).

(Doc. 73-3, p. 21). The record does not indicate whether the OFO took additional action on Mr. Hawthorne's administrative effort to obtain relief.[10] On May 3, 2018, Mr. Hawthorne filed in this Court a "Motion for Emergency Injunctive Relief" in which he asked this Court to prevent the Army from dismissing this EEO claim for failure to state a claim. (Doc. 1).

As noted, in September 2017, Mr. Hawthorne made an EEO complaint against Director Thompson "because she dismissed [his] [EEO] complaint [concerning Mr. Merriweather] . . . without dismissing all the claims." (Doc. 73, pp. 7, 25, ¶¶ 23, 100; Doc. 73-6, p. 9). In his complaint concerning Director Thompson, Mr. Hawthorne alleged:

> the Agency counsel did not add all his claims that were acknowledged, and also truncated others, as such they restrained him from filing a complaint when they dismissed his complaint without adding all of his claims, thereby also denying him his due process.

(Doc. 73-1, p. 43). Mr. Hawthorne alleged that the claims were "acknowledged" in the June 19, 2017 email from Chanley Pickard and were ignored in Director Thompson's decision. (Doc. 73-1, p. 43).

Mr. Hawthorne called Director Thompson's dismissal "intentional" and claimed that it was in retaliation because "I won an appeal over turning [sic] her

---

[10] In its brief in support of its motion to dismiss, the Army states that it moved to dismiss the pending OFO appeal because the instant case overlapped with that administrative action. (Doc. 83, p. 3).

efforts to deny my claim in case number ARREDSTON15AUG04058." (Doc. 73-6, p. 9). In the email triggering the EEO process concerning his complaint against Director Thompson, Mr. Hawthorne also complained "against Army Agency Attorneys relative to their Final Agency Decision (FAD) dated September 7, 2017." (Doc. 73-6, p. 9). Mr. Hawthorne alleged that when the decision in case number ARREDSTON15AUG04058 was overturned, an investigation discovered that the Army's attorneys made intentional misrepresentations to the EEOC. (Doc. 73-6, p. 9).[11] Mr. Hawthorne alleged that the use of "the same language" in the Army's brief in opposition to his appeal made it clear to him that Director Thompson and the Army were retaliating against him because of the results of that investigation. (Doc. 73-6, p. 9). Mr. Hawthorne designated the claim against Director Thompson "Claim 1" and the claim against the Army attorneys "Claim 2." (Doc. 73-6, p. 9).

On November 16, 2017, Mr. Hawthorne asked the Birmingham, Alabama District Office of the EEOC to appoint "an Equal Employment Opportunity Commission administrative judge" to hear this EEO complaint. (Doc. 73, p. 29, ¶ 118; Doc. 73-7, p. 5).

On December 21, 2017, Army EEO Director Rufus B. Caruthers, Jr. issued the Army's final decision dismissing Mr. Hawthorne's EEO complaint against

---

[11] The misrepresentations allegedly took place in agency case number ARREDSTON13JUN02070.

Director Thompson and the Army attorneys.  (Doc. 73, pp. 7–8, 33, ¶¶ 24, 131; Doc. 73-8, pp. 7–11).    Director Caruthers's opinion explained that "29 CFR 1614.107(a)(8) and AR 690-600 Chapter 4-4(14)" forbade such "spin-off complaints," or complaints "about the processing of an existing complaint."  (Doc. 73, p. 33, ¶ 131; Doc. 73-8, p. 7).

On January 29, 2018, apparently in response to Mr. Hawthorne's request for the appointment of an administrative law judge, EEOC Administrative Law Judge Justice Bean sent Mr. Hawthorne an order regarding this claim.  (Doc. 73, pp. 8, 35, ¶¶ 25, 135).  The Court has not located a copy of the order in the record.  Mr. Hawthorne alleges that in the order, Judge Bean "stated there were 5 questions the Judge wanted me to reply to relative to [the] complaint against EEO [D]irector Jennifer Thompson."  (Doc. 73, pp. 8, 35, ¶¶ 25, 135).  On February 8, 2018, Mr. Hawthorne responded to Judge Bean's order.  (Doc. 73, p. 8, ¶ 25; Doc. 73-9, pp. 1–7).  It is unclear from the amended complaint what, if anything, came of the proceedings that allegedly involve ALJ Bean.

## C. Mr. Hawthorne's EEO Complaint Against Joe Sanchez, Michael Drylie, and David Martin

Mike Drylie is the Engineer Team Lead in Mr. Hawthorne's department.  (Doc. 73, p. 8, ¶ 27).  Mr. Hawthorne alleges that in late November or early December of 2017, during a meeting with him and another engineer, Mr. Drylie "cut [Mr. Hawthorne] off, yelled, hissed, and puffed" every time Mr. Hawthorne tried to

20

offer input.  (Doc. 73-11, p. 24).  Mr. Drylie did not treat the other engineer in the meeting the same way.  (Doc. 73-11, p. 24).  After the meeting, Mr. Drylie apologized to Mr. Hawthorne for this conduct.  (Doc. 73-11, p. 24).

In January or February of 2018, Mr. Drylie approached Mr. Hawthorne at a restaurant and asked Mr. Hawthorne if he (Mr. Hawthorne) was the whistle-blower who had prompted an investigation from the Office of Special Counsel.  (Doc. 73, p. 14, ¶¶ 56–57; Doc. 73-10, p. 15; Doc. 73-11, p. 24).

Around the end of January 2018, Mr. Drylie and Mr. Hawthorne became involved in an argument and took the dispute to James Baker, the Deputy Program Manager.  (Doc. 73-11, p. 24).

On February 5, 2018, after Mr. Hawthorne would not give Mr. Drylie any specifics about what Mr. Hawthorne planned to discuss during the next Integrated Product team meeting, Mr. Drylie called Mr. Hawthorne and, "in a hostile voice," began cursing at Mr. Hawthorne.  (Doc. 73-11, p. 24).  Mr. Drylie said, "David what the fuck is wrong with you?" (Doc. 73-11, p. 24).  Mr. Hawthorne responded, "you are not going to be fucking cursing at me."  (Doc. 73-11, p. 24).  On February 6, 2018, Mr. Hawthorne sent Mr. Baker an email recounting this event and later spoke to Mr. Baker about it in person.  (Doc. 73-11, p. 24).

In mid-February of 2018, Mr. Drylie told Mr. Hawthorne about a conversation with Jose Sanchez, a Logistics Management Specialist Supervisor.  (Doc. 73-11, p.

24).  Mr. Drylie told Mr. Hawthorne that Mr. Sanchez "wanted to grow [Mr. Drylie] for a supervisory position."  (Doc. 73-11, p. 24).

In a March 14, 2018 email, Mr. Drylie asked Mr. Hawthorne and two other engineers "to make an attempt at developing wear criteria for a few enrolled weapon systems which do not currently have criteria." (Doc. 73, p. 9, ¶ 29; Doc. 73-10, pp. 19–20).  On March 26, 2018, Mr. Hawthorne sent an email to Mr. Drylie to explain that he completed the project "best [he] could" because Mr. Drylie had only given "limited guidance on it."  (Doc. 73, pp. 10, 11, ¶¶ 35, 41; Doc. 73-10, pp. 17–18).  Mr. Hawthorne asserted that Mr. Drylie had explained the assignment for about an hour and refused to answer any questions after that time.  (Doc. 73, p. 10, ¶ 36; Doc. 73-10, p. 17).  In the email, Mr. Hawthorne stated that he felt "singled out" because, of the two other engineers assigned the task,

> one . . . was not going to be here . . . [and] the other . . . has been working on this type of thing form much of the 5 years I've been here . . . and I was the only one to be here and never have worked this before and yet I could not get clarity or guidance from you on the project while you were still here.

(Doc. 73, p. 11, ¶ 41; Doc. 73-10, p. 18).

On March 29, 2018, Mr. Drylie sent a response email to Mr. Hawthorne. (Doc. 73, p. 12, ¶ 44; Doc. 73-10, p. 16).  In that response, Mr. Drylie indicated that he was "somewhat confused and concerned by [Mr. Hawthorne's] Email."  (Doc. 73, p. 12, ¶ 44; Doc. 73-10, p. 16).  His emailed continued:  "The task in question is

a part of your core duties and is described in both your Position Description and AR 750-1. This task is also specifically listed as a performance objective on your annual performance plan." (Doc. 73, p. 12, ¶ 44; Doc. 73-10, p. 16). Mr. Drylie explained that "[o]ver the 5 years you have been in this position we have discussed the development of evaluation criteria on multiple occasions" and that sufficient guidance had been given on the project, not only on March 14, 2018, but in previous meetings. (Doc. 73, p. 12, ¶¶ 45–47; Doc. 73-10, p. 16). Mr. Drylie explained that he "did deploy a different management technique in this situation, as previous efforts over the previous 5 years did not seem to be working." (Doc. 73, p. 12, ¶ 48; Doc. 73-10, p. 17). Mr. Drylie stated that he had "wanted each of [the engineers] to work the assignment on [their] own in the hopes that [they] would learn the process for [themselves] and also provide an opportunity for process improvement by having 3 additional sets of eyes on [Mr. Drylie's] work." (Doc. 73, p. 12, ¶ 47; Doc. 73-10, p. 16). Mr. Drylie also wrote:

> I am sorry that the message that this was purely a learning exercise and that my sole expectation was that you made an attempt was not completely clear to you. In this sense I believe the exercise was successful and effective, and I believe this is illustrated in the completed project you submitted.

(Doc. 73, p. 12, ¶ 48; Doc. 73-10, p. 17).

On April 2, 2018, Mr. Hawthorne sent a lengthy reply to Mr. Drylie's email. (Doc. 73, pp. 13–15, ¶¶ 52–61; Doc. 73-10, p. 14–16). In part of that reply, Mr.

Hawthorne called Mr. Drylie's previous email "an absolute mischaracterization of me, my work ethic and my ability to understand and do my job." (Doc. 73, pp. 13–14, ¶ 53; Doc. 73-10, p. 14). Mr. Hawthorne wrote, among other things:

> [I]n your March 30th 2018 reply to me you intentionally misrepresented what kind of work you did with me and you intentionally misrepresented over what period of time you did that work. because you have not worked with me for 5 years on wear analysis. What you have done is defamed me, used the profanity cursing at me, vociferously yelled at me in front of my team members and at times vehemently. and it all started after you asked me about being a whistle[-]blower and ramped up after you were told by Joe Sanchez that he would be grooming you for management to promote you supervisor.
>
> In the month of January/February you saw me out at cantina Laredo restaurant with friends in Bridge Street and made your way over to me to ask me if I was the whistle blower that prompted the (OSC) investigation. I of course said to you, "no I was not", after a long gazing stair of doubtful thought to my answer you an a few more minutes of small talk you left.

(Doc. 73, p. 14, ¶¶ 56–57; 73-10, p. 15). Mr. Hawthorne's reply email concluded: "I've filed a reprisal EEO complaint against Joe Sanchez and you for the continued hostile work environment and defamation of character." (Doc. 73, p. 15, ¶ 61; Doc. 73-10, p. 16).

In an April 2, 2018 email to Ms. Pickard in the Army's EEO office, Mr. Hawthorne began the EEO complaint process against Mr. Sanchez and Mr. Drylie for "reprisal." (Doc. 73, p. 13, ¶ 50; Doc. 73-10, p. 1). The email explained:

> I claim that Joe Sanchez and/or Agency has recently informed Michael Drylie, within or before the month of March 2018, that they the Agency was going to begin grooming Michael Drylie for a supervisor position;

in return Michael Drylie assisted Joe Sanchez and/or Agency in intentionally and maliciously defaming, belittle me in front of my coworkers and also literally and literally and unequivocally lying on my in a disparaging way relative to my work at LOGSA which ultimately affects the perception of someone wanting to hiring me for another federal position or federal training assignments I may apply for within or outside of LOGSA agency.

He has also made the work environment so uncomfortable I had to take that issue to my immediate manager Jim Baker . . ..

I believe these actions are Based on previous cases involving Joe Sanchez where he and other Agency managers, but specifically Joe Sanchez and Agency legal counsel because of the nexus to my previous cases, have been cited for intentionally not telling the truth under oath and/or on official agency responses to the EEOC OFO during an investigation for case number ARREDSTON13JUL02070 and ARREDSTON15AUG04058.

(Doc. 73-10, p. 1; Doc. 73, pp. 50–51, ¶¶ 198–199) (citation to exhibits omitted).

In an April 9, 2018 email to Katrisa Norwood in the Army EEO office, Mr. Hawthorne wrote:

NEW CLAIM AGAINST THE LOGSA DEPUTY COMMANDER DAVID MARTIN:
I would like to file another claim against David Martin Deputy Director of LOGSA. I claim that each time that I've made a title VII complaint against members of LOGSA it HAS been when the LOGSA Military Commander has be in Transition to LOGSA or has been away on leave from LOGSA and that Deputy Director David [M]artin HAS been directly or indirectly involved with those LOGSA employees I made the claims against.

I believe proof of this is that when I made a claim against the LOGSA Agency in 2013 for complaint number ARREDSTON13JUL02070 one of those claim were made against David Martin for his direct

25

involvement, while the LOGSA Military commander was absent and LOGSA was awaiting its new Army Military commander; and at the time his subordinate management official told me that if I did not drop my claim that there would be collateral damage to my career ... I did not drop my claim and every time since that ARREDSTON13JUL02070 complaint like my current complaint here in 2018 against the LOGSA agency David Martin has been at the head of the LOGSA organization while the Army commander has been away on leave or in transition to come command LOGSA. So Ms. Katrisa Norwood please add this claim against David Martin to my current complaint.

(Doc. 73-10, p. 21; Doc. 73, pp. 35–36, 51, ¶¶ 136–137, 200).  On April 25, 2018,

Mr. Hawthorne emailed Ms. Norwood again writing:

Please add the Bases to my current 2018 complaint of Age.

I did not think of it or make the connection before but now, today, that I think about it I believe these retaliatory efforts of not being truthful about my work and performance has to do with retaliation from previous complaints and the fact that I am older than all of my peers in my group and the Agency just believe me to be expendable because of my age as well as the retaliation I was promised if I did not drop my previous e EEO complaints.

So please add the Bases of Age discrimination to my current 2018 complaint against the LOGSA Agency.

(Doc. 73-11, p. 4, Doc. 73, p. 51, ¶ 201).

On July 23, 2018, Mr. Hawthorne mailed a request for a hearing on this claim

to the EEOC.  (Doc. 73, p. 38, ¶ 149; Doc. 73-12, p. 1; Doc. 73-13, p. 2).  The EEOC

received this request via certified mail on July 24, 2018.  (Doc. 73, p. 38, ¶ 150; Doc.

73-13, p. 1).

Director Thompson dismissed this EEO complaint on July 24, 2018 "in accordance with 29 CFR 1614.107(a)(1), under 1614.103, and AR 690-600 Chapter 4, Section II, 4-4a(1)" for "failure to state a claim."  (Doc. 73, p. 38, ¶ 149); Doc. 73-5, p.12; Doc. 73-13, p. 16).  Director Thompson wrote:

> In your formal complaint of discrimination, you alleged discrimination on the bases/basis of Age (49, 1968) and Reprisal (ARREDSTON15AUG04058 and ARREDSTON13JUL02070) when:
>
> a. On 29 March 2018, Michael Drylie, Team Lead, Oil and Analysis Program, LOGSA, age (39: YOB: 1979) and reprisal (previous EEO activity: unaware and none), sent an email stating you worked in the Oil and Analysis Program for five years and that he deployed different management techniques; which you feel defamed you.

(Doc. 73-5, p. 12).  Director Thompson continued:

> [T]he test to analyze the actions of an employer are whether those actions could reasonably deter an individual from filing or pursuing a complaint of discrimination in addition to an adverse employment action. The comments [alleged] were not accompanied by any disciplinary or other action, nor do they rise to the level that may dissuade an individual from pursuing a complaint of discrimination in the future. [Mr. Hawthorne] failed to allege that [he] suffered a personal loss or harm with respect to a term, condition, or privilege of employment.

(Doc. 73-5, p. 12, Doc. 73, pp. 51–52, ¶ 202).  An August 17, 2018 letter from the Army to Mr. Hawthorne states that Mr. Hawthorne "received [the] Notice of Dismissal on 8 August 2018."  (Doc. 73-13, p. 7).

Unbeknownst to Mr. Hawthorne, on July 19, 2018, prior to the dismissal, Director Thompson had forwarded Mr. Hawthorne's EEO complaint, and a copy of

her proposed dismissal order, to Brian Frye, Army agency counsel "for legal sufficiency review." (Doc. 73-13, p. 15; Doc. 73, pp. 39–40, 45–46, 52, ¶¶ 154, 179, 204). In response, on July 23, 2018, Mr. Frye recommended that Director Thompson "revise Mr. Hawthorne's claim in her proposed order, to more closely track" Mr. Hawthorne's "'actual words . . ..'" (Doc. 73-13, p. 15; Doc. 73, p. 52, ¶ 205). Also, Mr. Frye reported that, in his opinion, "Mr. Hawthorne's formal complaint does sufficiently state a claim for purposes of acceptance of the investigation." (Doc. 73-13, p. 15; Doc. 73, p. 39–40, 46, 52, ¶¶ 154, 180, 203).

In an August 10, 2018 email to Director Rufus and Director Thompson, Mr. Hawthorne began another EEO complaint process against Director Thompson for sex discrimination in her handling of Mr. Hawthorne's EEO complaint against Mr. Drylie, Mr. Sanchez, and Mr. Martin. (Doc. 73, p. 40, ¶ 157; Doc. 73-4, pp. 1–3). Mr. Hawthorne complained that Director Thompson dismissed his EEO complaint but allowed a similar claim by another female employee. (Doc. 73-4, p. 2; Doc. 73, p. 41, ¶¶ 160–161).[12]

## III.   ANALYSIS

### A.   The Claims Stated in the Amended Complaint

Mr. Hawthorne asserts several claims against the Army. (Counts 1-5, 8). In Counts 1-4, Mr. Hawthorne contends that Army Reg. 690-600 ¶ 4-4.a.(1) violates

---

[12] The formal complaint of discrimination for this claim appears at Doc. 84-1, pp. 17–22.

section 706 of the Administrative Procedures Act, 5 U.S.C. ¶ 706. (Doc. 73, pp. 47–50, 54–55, ¶¶ 188, 191, 194, 196, 216). In Count 5, Mr. Hawthorne alleges that the Army discriminated against him on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §§2000e through 2000e-17, when Director Thompson dismissed his 2018 EEO complaint. (Doc. 73, p. 56, ¶ 215). In Count 8, Mr. Hawthorne alleges that the Army "breached its duty of care when it did not protect [Mr. Hawthorne]" from Mr. Merriweather's alleged harassment and retaliation. (Doc. 73, p. 59, ¶ 223). In Count 8, Mr. Hawthorne also asserts that the Army is liable under Title VII for discrimination based on sex, sexual harassment, creating a hostile work environment, and retaliation. (Doc. 73, p. 60, ¶ 235).

In his amended complaint, Mr. Hawthorne includes claims against defendants other than the Army.[13] In Count 6, Mr. Hawthorne alleges that Local 1858 and Mr. Merriweather are liable under Title VII for sexual harassment. (Doc. 73, p. 58, ¶220). In Count 7, Mr. Hawthorne alleges that Local 1858 "breached its duty of care when it did not protect" him from Mr. Merriweather's alleged harassment and retaliation. (Doc. 73, pp. 58–59, ¶¶ 221). Similarly, in Count 10, Mr. Hawthorne

---

[13] Mr. Hawthorne did not formally name Local 1858, District 5, or the national union as parties. (Doc. 73, p. 2). But, as noted earlier, "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. The union entities acknowledge they have been sued. When the amended complaint is viewed as a whole, it is clear to the Court that Mr. Hawthorne intended to sue, and makes claims against, these entities. Accordingly, the Court construes the amended complaint as being filed against Local 1858, District 5, and the national union.

alleges that Local 1858 "breached its duty of care" when, "after being made aware of the sexual harassment complaint and the retaliation," the local union did not initiate an investigation.  (Doc. 73, p. 61, ¶ 237).

In Count 9, Mr. Hawthorne alleges that District 5 and Everett Kelley "breached their duty of care" when Mr. Kelley wrote his email of June 27, 2017, in which he stated that Mr. Merriweather's conduct did not rise to the level of sexual harassment, and "there is nothing for any of us to do at this time."  (Doc. 73-5, pp. 17–18; Doc. 73, p. 60, ¶ 236).  In Count 11, Mr. Hawthorne states that the national union and David Cox, the president of the national union, "breach[ed] [their] duty of care . . . when [their] attorneys, according to Everett Kelley . . . advised [Mr. Kelley] that they should do nothing because [the] claim of sexual harassment did not rise to unlawful [s]exual [h]arassment."  (Doc. 73, p. 61, ¶¶ 239–239).

## B. <u>Claims Based on Violations of Criminal Statutes</u>

The amended complaint contains many references to federal criminal statutes. (*See* Doc. 73, pp. 21, 28, 41 ¶¶ 86, 115, 162 (18 U.S.C. § 1505); Doc. 73, pp. 44, ¶ 174 (18 U.S.C. §1001(a)).   In his response to the union defendants' motion to dismiss, Mr. Hawthorne states that he is "making the claim and requesting the civil penalties [for] 18 USC 1505 and 18 USC 1001 violations."  (Doc. 80, p. 13, ¶ 35). Recently, in an opinion in another case filed by Mr. Hawthorne, Magistrate Judge Herman N. Johnson explained that neither 18 U.S.C. § 1001 nor 18 U.S.C. § 1505

creates a private right of action.  *See Hawthorne v. McCarthy*, No. 5:16-CV-01525-HNJ, 2020 WL 836840, at *7 (N.D. Ala. Feb. 20, 2020).  The Court adopts Judge Johnson's analysis concerning §§1001 and 1505, and the Court will dismiss all claims based on 18 U.S.C. §§1001 and 1505.

## C. <u>The Claims Against the Individual Defendants</u>

In his response to the union defendants' motion to dismiss, Mr. Hawthorne states:

> To the extent that [defense counsel] believes that I am suing Abner Merriweather and David Mollett or Mr. David [Cox] personally, he is wrong. I am suing the Organization of . . . Local 1858 . . . [the] 5th District . . . and the . . . National office . . . for said reasons as outlined in ECF 73.

(Doc. 80, pp. 14–15, ¶ 40).  Based upon this representation, the Court will dismiss all claims against Mr. Merriweather, Mr. Cox, and Mr. Mollett.[14]

## D. <u>The Claims Against the Army</u>

### i.   *The Administrative Procedures Act Claims*

In dismissing two of Mr. Hawthorne's EEO complaints, the Army cited Army Reg. 690-600 ¶ 4-4.a.(1) which allows an EEO officer to dismiss an EEO complaint

---

[14] In his amended complaint, Mr. Hawthorne alleges that Mr. Merriweather is liable for sexual harassment under Title VII.  (Doc. 73, p. 58, ¶ 220).  As a matter of law, Mr. Merriweather cannot be liable for a Title VII violation because he is not Mr. Hawthorne's "employer."  *See Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) ("[A] Title VII claim may be brought against only the employer and not against an individual employee."); 42 U.S.C. § 20003-16(c) (requiring a civil action by a federal employee to name "the head of the department, agency, or unit" as the defendant).

for "failure to state a claim." (Doc. 73-1, p. 20 (ARREDSTON17MAY01829); Doc. 73-5, p. 12 (ARREDSTON18APR01146)).[15]  Specifically, AR 690-600 ¶ 4-4.a.(1) states: "A complaint or a portion of a complaint will be dismissed by the EEO officer (subject to final decision by the Army Director of EEO or designee) if" the complaint fails to state a claim. "In determining whether a complaint states a claim under 29 CFR Section 1614.103, the proper inquiry is whether the conduct, if true, would constitute an unlawful employment practice under the EEO statutes." AR 690-600 ¶ 4-4.a.(1).

In Counts 1–4, Mr. Hawthorne asks this Court "to hold unlawful," "set aside," "declare unconstitutional," and/or "invalidate" Army Reg. 690-600 ¶ 4-4.a.(1) because, Mr. Hawthorne argues, the regulation violates section 706(2), subsections A through D, of the Administrative Procedures Act – the APA. (Doc. 73, pp. 47–50, 54–55, ¶¶ 188, 191, 194, 196, 216). Section 706(2) provides, among other

---

[15] The United States Court of Federal Claims has described the EEO process as follows:

> The procedures for accepting and dismissing EEO complaints are governed by Army Regulation 690–600. Pursuant to this regulation, an EEO supervisor reviews a formal EEO complaint to determine if the complaint meets any of the indicated grounds for dismissal (e.g., the complaint has failed to state a claim, is untimely, or is moot). If the EEO supervisor identifies no ground for dismissing the complaint, the supervisor is required to provide the complainant with a written decision accepting the claim as well as request assignment of the case to an investigator.

*Santiago v. United States*, 107 Fed. Cl. 154, 162 (2012).

things, that a district court may "hold unlawful and set aside agency action, findings, and conclusions" that the court determines are:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [and/or]
>
> (D) without observance of procedure required by law[.]

4 U.S.C. § 706.

In Count 1, Mr. Hawthorne alleges that Army Reg. 690-600 ¶ 4-4.a.(1) violates APA § 706(2)(C), which authorizes this Court to "hold unlawful and set aside agency action, findings, and conclusions" which are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." (Doc. 73, pp. 47–48, ¶¶ 188–191). Title VII requires the EEOC to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate" to ensure that federal government personnel actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a)–(b). Title VII requires the Army, to "comply with such rules, regulations, orders and instructions" enacted by the EEOC. 42 U.S.C. § 2000e-16(b).

Under these statutory provisions, the EEOC enacted 29 C.F.R. § 1614.109(b)—which states that "[EEOC] [a]dministrative judges may dismiss

complaints pursuant to § 1614.107, on their own initiative, after notice to the parties, or upon an agency's motion to dismiss a complaint"—and the Army enacted Army Reg. 690-600 ¶ 4-4.a.(1)—which sets out the standard by which an Army EEO officer shall dismiss a complaint for failure to state a claim.  Mr. Hawthorne asserts that Army Reg. 690-600 ¶ 4-4.a.(1) conflicts with 29 C.F.R. § 1614.109(b).  (Doc. 73, p. 48).  Mr. Hawthorne contends that the EEOC should not be able to dismiss a claim pursuant to Army Reg. 690-600 ¶ 4-4.a.(1) without going through the process identified in 29 C.F.R. §1614.109(b).  (Doc. 73, p. 48).

Mr. Hawthorne's argument rests on a misunderstanding of 29 C.F.R. § 1614.109(b).  That regulation applies only after "a complainant requests a hearing," and the EEOC has appointed an administrative judge "to conduct a hearing in accordance with the section."  29 C.F.R. §1614.109(a).  Before a request for an administrative hearing, an agency, such as the Army, "shall dismiss an entire complaint . . . [t]hat fails to state a claim."  29 C.F.R. § 1614.107(a)(1).[16]  Therefore, Army Reg. 690-600 ¶ 4-4.a.(1) is consistent with applicable EEOC regulations.  As the purported conflict was the only basis for Count 1, the Court will dismiss Count 1.[17]

---

[17]  In each dismissal of the EEO complaints that referenced Army Reg. 690-600 ¶ 4-4.a.(1), the Army also referenced 29 C.F.R. 1614.107(a)(1). (Doc. 73-1, p. 20 (ARREDSTON17MAY01829); Doc. 73-5, p.12 (ARREDSTON18APR01146)).   As to ARIMCOMHQ17SEP0481 and ARREDSTON18APR01146, Mr. Hawthorne alleges that he requested a hearing before the Army issued a final determination of dismissal based on failure to state a claim.  (Doc. 73, p. 29, 38, ¶¶

In Count 2, Mr. Hawthorne asks the Court to set aside Army Reg. 690-600 ¶ 4-4.a.(1) because the regulation is "contrary to constitutional right, power, privilege, or immunity" in violation of section 706(2)(B).  (Doc. 73, pp. 48–49, ¶¶ 192–194).  Mr. Hawthorne lacks standing to challenge the constitutionality of Army Reg. 690-600 ¶ 4-4.a(1).  To have standing, Mr. Hawthorne must plead facts that indicate that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).   Here, Mr. Hawthorne has not alleged an "injury in fact" because, even if the Army's regulation is unconstitutional, he is entitled to a *de novo* review of his claims in federal district court.  42 U.S.C. §2000e-16(c); 29 C.F.R. § 1614.407; 5 U.S.C. § 704.  Therefore, he has not been harmed.

In Count 3, Mr. Hawthorne alleges a violation of section 706(2)(D), in that the Army regulation was enacted "without observance of procedure required by law."  (Doc. 73, pp. 49–50, ¶¶ 195–196).  Court's typically read section 706(2)(D) as requiring a reviewing court to invalidate an agency rule that does not comport with the APA's rulemaking procedures.  *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, 933 F. Supp. 2d 700, 709 (E.D. Pa. 2013); *Record Buck Farms,*

---

118, 149–150; Doc. 73-7, p. 5; Doc. 73-12, p. 1; Doc. 73-13, pp.1–2).  But in Count I, Mr. Hawthorne challenges the validity of Army Reg. 690-600 ¶ 4-4.a (1).  In Count I, he does not challenge the way in which the Army applied Army Reg. 690-600 ¶ 4-4.a (1).

*Inc. v. Johanns*, 510 F. Supp. 2d 868, 874 (M.D. Fla. 2007); *Ocean Conservancy v. Evans*, 260 F. Supp. 2d 1162, 1186 (M.D. Fla. 2003).  Those procedures include, among other things, publishing general notice of the proposed rule in the Federal Register and giving "interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation."  5 U.S.C. § 553(b), (c).  The amended complaint makes no allegation that the issuance of Army Reg. 690-600 ¶ 4-4.a(1) ran afoul of these rules or any others set out in the APA.

The language of section 706(2)(D) does not expressly limit review to only whether the Army followed "rulemaking procedures" in enacting Army Reg. 690-600 ¶ 4-4.a(1), but Mr. Hawthorne offers no other reason for invalidating the regulation.  He alleges only that there is "no [C]ongressional or constitutional authority for the Army to use that regulation" and that the regulation conflicts with 29 C.F.R. § 1614.109(b).  (Doc. 73, p. 50, ¶ 196).  For the reasons previously stated, these arguments are without merit.

Section 706(2)(A) allows this Court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  4 U.S.C. §706(2)(A).  In Count 4, Mr. Hawthorne alleges that, with regard to the EEO complaints in ARREDSTON18APR01146 and ARREDSTON17MAY01829, the Army used Army Reg. 690-600 ¶ 4-4.a(1) against

him in an "arbitrary" and "capricious" manner, and abused its discretion, in violation of section 706(A).  (Doc. 73, pp. 50, 53, 54, 55, ¶¶ 197, 210, 216, 217).[18]  Mr. Hawthorne alleges that "based on the Army's director's arbitrary and capricious use of the Army regulation . . . this regulation is suitable for invalidation."  (Doc. 73, pp. 54–55, ¶ 216).

Even if the Army's decision to dismiss Mr. Hawthorne's EEO complaints were arbitrary and capricious, the Court would not have to invalidate Army Reg. 690-600 ¶ 4-4.a(1) to provide relief to Mr. Hawthorne.  As noted, Mr. Hawthorne is entitled to a *de novo* review of the merits of those decisions here in federal district court.  Therefore, if the Army erred when it dismissed one or more of his EEO complaints for failure to state a claim, this Court may reinstate the claims; it does not have to invalidate the regulation.  Therefore, the Court will dismiss Count 4.

### ii.   *The Title VII Claim Based on Director Thompson's Dismissal of ARREDSTON18APR01146*

In Count 5, Mr. Hawthorne alleges that the Army discriminated against him on the basis of sex in violation of Title VII when Director Thompson dismissed ARREDSTON18APR01146. (Doc. 73, p. 56, ¶ 215).  Based on this alleged conduct,

---

[18] The Army states that Count 4 also concerns ARIMCOMHQ18OCT03864 (Doc. 89, p. 1, n. 2), but that EEO complaint is not mentioned in Count 4.

Mr. Hawthorne filed an EEO complaint with the Army that it designated ARIMCOMHQ18OCT03864.  (Doc. 73, pp. 56–57, ¶ 216).

The Army argues that the Court must dismiss this count because Mr. Hawthorne:

> has not complied with the Court's standing order on [this] EEO claim[]. Plaintiff has not attached the necessary EEO documents or provided the notice of the right to sue. It is therefore not clear whether Plaintiff has exhausted this claim or if the claim is timely raised here. Therefore, the Court should dismiss Count 5 based on Plaintiff's failure to comply with the Court's order.

(Doc. 83, p. 10).  The Eleventh Circuit has stated:

> Both federal statutes and EEOC regulations require a federal employee to exhaust an administrative process before filing a civil complaint of discrimination in the workplace. An aggrieved federal employee first must file a formal complaint with the agency that allegedly discriminated against him. 29 C.F.R. § 1614.106(a). <u>After the agency has rendered a final decision</u>, the employee has the option to appeal the decision of the agency to either the federal district court or the EEOC. 42 U.S.C. § 2000e–16(c). If the employee appeals to the EEOC and the EEOC does not issue a decision within 180 days, the employee may file a complaint in the district court. *Id*.; 29 C.F.R. § 1614.407(d).

*Brown v. Snow*, 440 F.3d 1259, 1262–63 (11th Cir. 2006) (emphasis added).

In his June 2019 brief in opposition to the Army's initial motion to dismiss his amended complaint, Mr. Hawthorne states that he has not received a final agency decision in ARIMCOMHQ18OCT03864.  (Doc. 84, pp. 15–16).  He contends that this was because the Army EEO officers "are just not cooperating," and "are not following the law."  (Doc. 84, pp. 15–18, ¶¶ 34–41).  A copy of an email in the

record indicates that the Army may have issued a final decision on this claim in October 2019. (Doc. 88, p. 3). That decision does not appear in the record. In his opposition to the Army's supplemental motion to dismiss, Mr. Hawthorne states that the Army dismissed ARIMCOMHQ18OCT03864 "according to Army regulation AR 690-600 Section 4-4(14)" and "unlawfully . . . under the authority of 29 CFRS1614.107." (Doc. 94, pp. 12–13). For the purposes of this opinion, the Court gives Mr. Hawthorne the benefit of the doubt and finds that through his supplemental submissions, he has sufficiently identified a final administrative decision on this EEO complaint.

The Army also contends that this Court does not have jurisdiction to hear this matter under the APA. Under the APA, the Court may review only "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Army argues Mr. Hawthorne has not identified a final agency action in Count 5. The Supreme Court has noted:

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process, it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The Army's decision dismissing ARIMCOMHQ18OCT03864 was the both consummation of the agency's process and a determination of Mr. Hawthorne's rights. It therefore was "final."

The Army argues that even if Mr. Hawthorne properly exhausted his discrimination claim against Director Thompson, the Court should dismiss that claim because Mr. Hawthorne cannot raise a claim challenge the process of handling another EEO complaint.  In support of its argument, the Army cites several decisions from other courts including *Newsome v. EEOC*, 301 F.3d 227 (5th Cir. 2002) (EEOC's dismissal of an underlying charge of discrimination not reviewable under the APA), *Stewart v. EEOC*, 611 F.2d 679 (7th Cir. 1979) (EEOC's failure to make a reasonable cause determination for more than two years after the filing of the original charge is not actionable under the APA); and *Georator v. EEOC,* 592 F.2d 765 (4th Cir. 1979) (EEOC's determination of reasonable cause on underlying charge of discrimination is not reviewable under the APA).  In each decision, the plaintiff challenged the administrative process.  Here, Mr. Hawthorne challenges Director Thompson's intent, arguing that discriminated against him in her handling of the underlying case.  The cases on which the Army relies do not require dismissal of Mr. Hawthorne's Title VII claim pursuant to the APA.  Therefore, the Court will deny the Army's motion as it relates to Count 5.

### iii.   *Claims Based on Article 13(a) of the Collective Bargaining Agreement Between the Army and Local 1858*

Article 13(a) of the Collective Bargaining Agreement between the Army and Local 1858 reads:  "The Employer and the Union will conduct a continuing campaign to eradicate every form of prejudice or discrimination based upon race,

color, religion, age, sex (gender), physical or mental handicap, sexual harassment, national origin, or reprisal." (Doc. 73-2, p. 23). In Count 8, Mr. Hawthorne alleges that "pursuant to Article 13(a) . . . the Army breached its duty of care when it did not protect [Mr. Hawthorne]" from Mr. Merriweather's alleged harassment and retaliation. (Doc. 73, p. 59, ¶ 223). Mr. Hawthorne also contends that the Army is liable under Title VII for discrimination based on sex, sexual harassment, creating a hostile work environment, and retaliation because of Mr. Merriweather's conduct. (Doc. 73, p. 59, ¶ 223 (referencing "Title VII"); Doc. 73, p. 60, ¶ 235 (citing 42 U.S.C. § 2000e-2, *et seq*.).

The Army argues that sovereign immunity bars Count 8 to the extent that the count is based on Article 13(a) and the allegation that the Army "breached its duty of care." Under the principle of sovereign immunity, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal quotations and citations omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver. The terms of consent to be sued may not be inferred, but must be

unequivocally expressed." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (internal quotations and citations omitted). Mr. Hawthorne does not argue that the United States has waived sovereign immunity for a claim based on breach of a collective bargaining agreement, and the Court is not aware of authority establishing waiver.[19] Accordingly, to the extent that Count 8 sets out a claim against the Army pursuant to Article 13(a), the Court will dismiss the claim.

The Title VII claim in Count 8 is another matter. The Army argues that Mr. Hawthorne has not exhausted the administrative prerequisites to filing the Title VII claim in Count 8. In his brief, Mr. Hawthorne states that the basis for the claims in Count 8 is Mr. Merriweather's conduct. (Doc. 84, p. 33, ¶ 83). Mr. Hawthorne set out that conduct in his May 2017 EEO complaint, ARREDSTON17MAY01829.

The Army assumed in its brief that Mr. Hawthorne had abandoned his claims based on ARREDSTON17MAY01829. Still, the Army stated:

> Plaintiff's merits challenges likewise fail. Actions taken by a union representative do not state a claim of harassment for which the Army is responsible and therefore the EEOC correctly concluded that he had not stated a claim for relief. In addition, even if the claims against the union president could go forward, the EEOC correctly dismissed them on the basis that the alleged conduct is not sufficiently severe or pervasive to state a claim for a hostile work environment. Accordingly, the case should be dismissed consistent with Rule 12(b)(6).

---

[19] Mr. Hawthorne argues that the APA waives sovereign immunity and/or that sovereign immunity does not apply in APA cases. (Doc. 84, pp. 13–14, 24–27, 37–38, ¶¶ 30–33, 60–69, 96–100). The claim under Article 13(a) is not an APA claim.

(Doc. 83, p. 6). The Army also adopted by incorporation the arguments it made for dismissal of this claim in its previous motions, "to the extent [the Army] is misreading the [amended] complaint. (Doc. 83, p. 10, n. 1).[20]

The Court has considered the factual allegations in ARREDSTON17MAY01829 and the factual allegations that Mr. Hawthorne asked the Army EEO office, in his email of June 19, 2017, to add to his EEO complaint. For several reasons, those factual allegations do not support a Title VII claim against the Army concerning Mr. Merriweather's alleged conduct.

First, the Army does not control and is not responsible for conduct by union members in the performance of their union duties or by the union itself.

Second, Mr. Hawthorne has not alleged an adverse employment action resulting from Mr. Merriweather's conduct to support a discrimination claim. As the Eleventh Circuit has explained:

> Sexual harassment can constitute discrimination based on sex for purposes of Title VII. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244–45 (11th Cir.1999) (en banc). Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as "hostile work environment" harassment), and harassment that does result in a tangible employment action (traditionally referred to as "quid pro quo" harassment). *See generally Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760–63, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

---

[20] The Army moved to dismiss earlier versions of Mr. Hawthorne's complaint, and the Army asked the Court to dismiss those complaints in Doc. 29 and Doc. 54. Mr. Hawthorne filed responses to each motion. (Docs. 34, 59). Because Mr. Hawthorne had an opportunity to respond, the Court will consider the Army's incorporated arguments.

*Johnson v. Booker T. Washington Broad. Serv., Inc*., 234 F.3d 501, 507–08 (11th Cir. 2000).  Mr. Hawthorne does not allege that Mr. Merriweather or the Army engaged in quid pro quo harassment, as the amended complaint alleges no tangible employment action that the Army or an agent of the Army took against Mr. Hawthorne.[21]

Third, Mr. Hawthorne has not alleged facts to support a hostile work environment claim.  A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  The severity requirement:

> contains both an objective and a subjective component. *See Harris*, 510 U.S. at 21–22, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295. Thus, to be actionable, this behavior must result in both an environment "that a reasonable person would find hostile or abusive" and an environment that the victim "subjectively perceive[s] ... to be abusive."

*Miller*, 277 F.3d at 1276 (quoting *Harris*, 510 U.S. at 21–22).  To evaluate the objective severity of the alleged harassment, a district court considers, among other

---

[21] Mr. Hawthorne alleges that Mr. Merriweather, as union president, stripped Mr. Hawthorne of the position of vice president in retaliation for the filing of an EEO complaint against him.  That is not an employment action by the Army or by an agent of the Army.

things:  (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Miller*, 277 F.3d at 1276 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (in turn citing *Harris*, 510 U.S. at 23)).

Mr. Merriweather's alleged conduct occurred outside of the workplace, and Mr. Hawthorne has not alleged that the conduct affected him at work.  To be sure, the efforts of union leaders affect the workplace, so interactions between union leaders may not be entirely unrelated to the workplace.  But in this case, Mr. Hawthorne and Mr. Merriweather work in completely different departments of the Army, and their only alleged connection is their membership in Local 1858.  Alleged harassing conduct on Mr. Merriweather's part outside of the Redstone Arsenal would not follow Mr. Hawthorne into the workplace and impact Mr. Hawthorne's relationship with the Army.

The retaliation claim in Count 8 based on the EEO complaint filed in ARREDSTON17MAY01829 also fails.

> Title VII's antiretaliation provision forbids employer actions that "discriminate against" an employee (or job applicant) because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." § 2000e–3(a).

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006).   Mr. Hawthorne's retaliation claim is based on Mr. Merriweather's removal of Mr. Hawthorne from Mr. Hawthorne's union position.   As noted above, because Mr. Merriweather took that action as a member of the union, not as an employee of the Army, the retaliation claim against the Army fails.

Thus, the Court will dismiss Count 8.

### E.  Claims Against Local 1858, District 5, and the National Union

#### i.  *Title VII Claims Against Local 1858*

In Count 6, Mr. Hawthorne alleges that Local 1858 is liable for sexual harassment under Title VII based on Mr. Merriweather's conduct.  (Doc. 73, p. 58, ¶ 220; Doc. 80, p. 8, ¶¶ 21–22 ("This claim is based on 42 U.S.C. §2000e-2(a), *et seq*.")).  The Court will dismiss Count 6 because Mr. Hawthorne did not exhaust his administrative remedies with respect to the union defendants.

"Before a potential plaintiff may sue for discrimination under Title VII, [he] must first exhaust [his] administrative remedies. The first step down this path is filing a timely charge of discrimination with the EEOC."  *Wilkerson v. Grinnell Corp*., 270 F.3d 1314, 1317 (11th Cir. 2001) (citations omitted); 42 U.S.C. § 2000e–5(b).  A charge must be "in writing under oath or affirmation" and must "contain such information and be in such form as the Commission requires."  42 U.S.C. § 2000e-5(b).  A charge allows the EEOC to investigate the charge with an employer

and attempt to resolve the charge short of litigation.  Mr. Hawthorne filed several EEO charges with the Army, but he has not identified a charge against Local 1858. The Supreme Court has held that Title VII's charge-filing requirement is "mandatory."  *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). Because Mr. Hawthorne did not file a charge with the EEOC naming Local 1858, the Court must dismiss Count 6.

### ii.    *Claims Based on Article 13(a) of the Collective Bargaining Agreement between the Army and Local 1858*

In Count 9, Mr. Hawthorne alleges that District 5 and Everett Kelley "breached their duty of care" under Article 13(a) of the Collective Bargaining Agreement between the Army and Local 1858 when Mr. Kelley wrote his email of June 27, 2017, in which he stated that Mr. Merriweather's conduct did not rise to the level of sexual harassment, and "there is nothing for any of us to do at this time." (Doc. 73-5, pp. 17–18; Doc. 73, p. 60, ¶ 236).  Mr. Hawthorne contends that District 5 "should have initiated an investigation to comply with Article 13(a)."  (Doc. 73, p. 60, ¶236).  He also asserts that "the 5th District . . . interfered with . . . . Local 1858 Adhering to Article 13(a) and investigating."  (Doc. 73, p. 60, ¶ 236).  In Count 11, Mr. Hawthorne alleges that the national union and Mr. Cox "breach[ed] [their] duty of care" under Article 13(a) "when [their] attorneys, according to Everett Kelley . . . advised [Mr. Kelley] that they should do nothing because [the] claim of sexual harassment did not rise to unlawful [s]exual [h]arassment."  (Doc. 73, p. 61, ¶¶239-

239).  In Count 7, Mr. Hawthorne alleges that the local union "breached its duty of care [under Article 13(a)] when it did not protect [Mr. Hawthorne]" from Mr. Merriweather's alleged harassment and retaliation.  (Doc. 73, pp. 58–59, ¶¶ 221–222; Doc. 73-1, pp. 13 and 1–109 generally).  In Count 10, Mr. Hawthorne alleges that the local union "breached its duty of care" pursuant to Article 13(a) when, "after being made aware of the sexual harassment complaint and the retaliation," the local union did not initiate an investigation.  (Doc. 73, p. 61, ¶ 237).  Thus, each of these theories of actionable conduct are tethered to Article 13(a).

The Court will dismiss these claims because to the extent that Article 13(a) of the collective bargaining agreement between Local 1858 and the Army gives rise to an enforceable duty, it is a duty that Mr. Hawthorne must pursue through the collective bargaining dispute resolution process.  "Title VII of the Civil Service Reform Act ("CSRA") explicitly governs labor-management relations in the federal sector."  *Warren v. Local 1759, Am. Fed'n of Gov't Employees*, 764 F.2d 1395, 1396 (11th Cir. 1985) (citing 5 U.S.C. § 7101 *et seq.*).  Under the CSRA, Local 1858, District 5, and the national union have a duty of fair representation and must "represent[] the interests of all employees in the unit . . . without discrimination."  5 U.S.C. § 7114(a)(1).  "[A] breach of the duty of fair representation is an unfair labor practice."  *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527,

532 (1989) (citing 5 U.S.C. § 7116(b)(8)).  The CSRA states that "unfair labor

practices" include, among other things, acts

> (1) to interfere with, restrain, or coerce any employee in the exercise by
> the employee of any right under this chapter;

> (2) to cause or attempt to cause an agency to discriminate against any
> employee in the exercise by the employee of any right under this
> chapter; [and]

> (4) to discriminate against an employee with regard to the terms or
> conditions of membership in the labor organization on the basis of race,
> color, creed, national origin, sex, age, preferential or nonpreferential
> civil service status, political affiliation, marital status, or handicapping
> condition[.]

5 U.S.C. §7116(b)(1–2, 4).

The CSRA confers exclusive jurisdiction over unfair labor practice

complaints on the Federal Labor Relations Authority.  5 U.S.C. § 7118; *Karahalios*,

489 U.S. at 532 ("Under § 7118, unfair labor practice complaints are adjudicated by

the FLRA[.]"); *Warren*, 764 F.2d at 1399.  Judicial review of a decision of the FLRA

lies with a federal circuit court of appeals.  5 U.S.C. § 7123(a).  Federal district courts

lack subject matter jurisdiction to hear duty of fair representation/unfair labor

practices cases.  And the CSRA preempts federal causes of action resulting from

unfair labor practices.  *Karahalios*, 489 U.S. at 537.

Because the "duties" Mr. Hawthorne ascribes to the union defendants fall

squarely within the categories of unfair labor practices set out above, the CSRA

preempts his claims based on Article 13(a).  If he wishes to pursue those claims, Mr.

Hawthorne must do so before the Fair Labor Relations Authority.  Accordingly, this Court will dismiss the Article 13(a) claims against the union defendants.

## IV.    CONCLUSION

For the reasons discussed above, the Court denies the Army's motion to dismiss and supplemental motion to dismiss, (Docs. 83, 89), as to Count 5.  In all other respects, the Court grants those motions and dismisses the remaining counts (Counts 1–4, 8) with prejudice.

The Court grants the union defendants motion to dismiss, (Doc. 79), in its entirety.  The following claims are dismissed with prejudice:  all claims based on the violation of 18 U.S.C. §§ 1001 and 1505; all claims against the individual defendants; and all claims in Count 6.  The Court dismisses without prejudice the remaining claims against Local 1858, District 5, and the national union so that Mr. Hawthorne may pursue those claims in a proper forum if he wishes.  (Counts 7, 9, 10–11).

The recent General Orders Regarding Court Operations During the Public Health Emergency Caused by the COVID-19 Virus, (N.D. Ala. Mar. 17, 2020 and April 13, 2020), do not affect the deadline to challenge a final order or judgment on appeal.  *See*    https://www.alnd.uscourts.gov/general-order-regarding-court-operations-during-public-health-emergency-caused-covid-19-virus, p. 2, ¶ 7.  The parties are reminded that under Rule 4(a)(5) of the Federal Rules of Appellate

Procedure, a party may request an extension of time for a notice of appeal. In addition, pursuant to Rule 4(a)(6), a party may ask a district court to reopen the time to file a notice of appeal for 14 days. Parties are advised to study these rules carefully if circumstances created by the COVID-19 Public Health Emergency require motions under FRAP 4(a)(5) or 4(a)(6).

**DONE** and **ORDERED** this May 29, 2020.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE